## APPEAL OF H. M. PRIESTLEY, ADMRX.
## APPEAL OF EPHRAIM CUTTER, ADMR.

[ESTATE OF HUGH BELLAS, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF NORTHUMBERLAND COUNTY.

Argued May 28, 1889—Decided June 28, 1889.

[To be reported.]

1. Notwithstanding the language ("shall grant") of § 1, act of October 13, 1840, P. L. (1841) 1, an account settled and confirmed by the Orphans' Court can be reviewed only for error of law apparent on the face of the record, or for new matter which has arisen since the decree: Simpson's App., 18 W. N. 175, distinguished.

2. The bill of review must be founded upon some error apparent upon the bill or petition, answer and other pleadings, and decree, which together constitute the record; and the evidence cannot be looked into to support an objection based upon the supposed error of the court in its deductions therefrom.

3. But, as a matter of grace, a review may be granted for new proof discovered after the decree, which proof could not possibly be used at the time when the decree was made; yet, where the party complaining has been guilty of laches after notice of the decree, the bill should not be granted.

4. The notice by advertisement, directed by law, that an account has been filed and will be presented to the Orphans' Court for confirmation, is effective upon any person or persons entitled to come in and object to the decree.

5. And where the petition for a bill of review of an account confirmed, alleges no error of law apparent on the face of the record, but error merely in the amount of commissions allowed to accountant, determinable on the facts, and there is no allegation of after-discovered testimony, the petition should be refused.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

Nos. 242, 371 January Term 1889, Sup. Ct.; court below, No. 48 February Term 1887, O. C.

### Statement of Facts.

On April 11, 1887, the petition of Ann C. Rodrigue was presented, setting forth, in substance :

That Hugh Bellas, late of the borough of Sunbury, died having made his last will duly admitted to probate, in a codicil to which, dated November 3, 1860, he devised to trustees a certain portion of his property in trust for Ann C. Rodrigue, providing : " And the said trustees or either of them are required to apply all the proceeds and profits thereof to her personal use and support and benefit from time to time as she may need and require, when deemed necessary for herself and children, but not to be applied or used otherwise.*

That, the trustees named in the codicil declining to act, Dr. Joseph Priestley was appointed by the court on August 17, 1865, as substituted trustee ; and, the executors named in the will also declining to act, letters of administration c. t. a. were issued to Mr. S. P. Wolverton, who " attended to all the duties of the appointment in your petitioner's interest in said estate, and no labor or responsibility was required on the part of said trustee, except the mere form of transmitting to her checks which were drawn monthly by the said administrator and sent to him."

That on December 11, 1882, the said Dr. Priestley had presented a petition to the Orphans' Court upon which he was discharged from the trust, " which he had not acted in for ten years," and she had lately been informed that on September 6, 1882, Dr. Priestley had filed an account, in which he had charged himself with having received various sums of money, taken from the distribution accounts attached to the annual accounts of S. P. Wolverton, administrator c. t. a. of Hugh Bellas, deceased, amounting to $76,777.95, and had taken credit with having paid the same out on the same date to her, and charged thereon a commission of $1,560.40.

" Your petitioner avers that not one dollar went into the hands of the said Joseph Priestley, as her trustee ; that it was transferred bodily from the accounts of S. P. Wolverton, administrator with the will annexed, and that all the items embraced in said account were paid directly to her by S. P.

---

* In Rodrigue's App., 22 W. N. 358, it was decided that, Mrs. Rodrigue being a widow and not in contemplation of marriage, the trust created by this codicil was passive and the cestui que trust was entitled to a conveyance of the property.

Wolverton, administrator, under an agreement in writing, signed by herself and all her children, providing for the direct payment to her, instead of through the trustee. She further avers that she is a non-resident of the state, and is now residing at Woodbridge, in the state of New Jersey; that she had no notice of the filing of said account in writing, and only recently learned of the existence of said account, and the fact that a rule had been obtained upon her to pay the said sum of $1,560.40. That the said account is incorrect, in the fact that it states upon its face that $76,777.95 was received by Joseph Priestley, from S. P. Wolverton, administrator of Hugh Bellas, deceased, when in truth none of said money went into his hands, and it is incorrect in stating that he paid out these amounts at various dates therein stated to Ann C. Rodrigue; that the money was all paid directly by S. P. Wolverton, administrator, to her, and did not go through the hands of the said alleged trustee."

Further averring that it was incorrect to charge "her for services which were never performed, a commission of $1,560.40," the petitioner brought this her bill or petition for review, and prayed to be relieved thereon, and that a citation should issue upon Hannah H. Priestley, administratrix of Dr. Joseph Priestley, then deceased, and all parties interested, commanding them, etc.

The answer of Hannah H. Priestley, administratrix of Dr. Priestley, filed to the foregoing petition, set out, inter alia, the duties performed by the trustee, of which the petitioner had knowledge; that his account was prepared in the office and with the knowledge of the administrator c. t. a. of the estate, and from the receipts and vouchers of the trustee which he had permitted to remain in the hands of said administrator; that the filing of said account with the register was advertised in due form of law, and, no exceptions being filed thereto, was confirmed absolutely on December 6, 1882; that the respondent had no knowledge of the existence of an agreement in writing, signed by the petitioner and her children, providing for the direct payment to the petitioner, instead of through the trustee, as alleged.

"Your respondent, further averring that the said account is correct in every particular and most carefully and conscientiously stated by the accountant; that there are no specific

Statement of Facts.

errors alleged in said petition, nor any errors apparent on the face of the record; that the only error alleged, other than that of filing an account at all, is the striking of a balance which shows that there was due the accountant at the time of the filing thereof the sum of $1,560.40, which sum represents and includes commissions for acting as trustee for ten years and upwards, the payment of counsel fees, the register for passing the account, and the responsibility for the proper appropriation of $76,777.95; that the said account was filed with the actual and legal knowledge of said petitioner; that no exceptions were taken thereto by her, or by any one in her behalf, and that upwards of four years have elapsed since the absolute confirmation thereof, prays the said court that she may be dismissed," etc.

The foregoing answer having been filed, on June 29, 1887, the court appointed *Mr. J. Nevin Hill*, auditor, to hear the testimony and to report the facts in the case, and his opinion thereon.

The auditor found as facts, in substance, that from the time of his appointment, in August, 1865, up to July, 1872, Dr. Priestley acted uninterruptedly as trustee under the will of Mr. Bellas and the appointment of the court, receiving from the administrator c. t. a. moneys due Mrs. Rodrigue and paying the same over to her; that in 1872, there were disagreements between Mrs. Rodrigue and Dr. Priestley relative to his charges for compensation and partly the result of his refusal to pay her the proceeds of the sale of some real estate, to which he was advised she was not entitled; that, upon these disagreements, Dr. Priestley filed what was denominated a final account and made application to the court to be discharged, but his petition was held under advisement until a satisfactory trustee could be agreed upon and would consent to take his place; that from this time on the administrator of the estate paid the moneys due Mrs. Rodrigue directly to her, taking receipts, however, to Dr. Priestley as trustee; that "for some reason unexplained, probably because Mrs. Rodrigue regarded it as unnecessary and a useless expense," no trustee to relieve Dr. Priestley was appointed or even applied for; that in the account stated in 1882, the items were taken from the annual accounts filed by the administrator; that "on the debtor side, he charged the ac-

countant with 'cash received from S. P. Wolverton, administrator of Hugh Bellas' numerous items aggregating $76,777.95. On the credit side, he gave credit for a balance due from the former account, filed April, 1872, $28.16, and numerous items of 'cash paid Mrs. Ann C. Rodrigue' aggregating, with one item of ' commissions due accountant,' of $1,522.24, and another of $10.00 paid the register for passing account, the sum of $78,338.35 showing a balance due the accountant of $1,560.40;" that by a paper dated April 9, 1878, signed by Mrs. Rodrigue and all her children, acknowledged and recorded, Mr. Wolverton, the administrator c. t. a., was authorized to pay directly and monthly to Mrs. Rodrigue the one third of the income, her share under the will, without the delay and expense of the payment of the same through a trustee ; that it was not shown that Mrs. Rodrigue had actual knowledge of the filing of the account of 1882, but she had constructive notice thereof by the advertisement of it by the register ; that Dr. Priestley died on March 10, 1883, and on March 23, 1883, letters of administration upon his estate were granted to Hannah H. Priestley, his widow.

The auditor, upon the facts found by him, but briefly abstracted above, reported the following opinion :

The application for a review of the account of Dr. Joseph Priestley, trustee of Ann C. Rodrigue, is made under the provisions of the first section of the act of October 13, 1840, P. L. (1841) 1.

This act does not specifically mention accounts of testamentary trustees, but was evidently intended to include all accounts over which the Orphans' Court has jurisdiction. The act is remedial and should be liberally construed, and I believe it is broad enough to cover the present case.

The petition in this case was presented within five years after final decree confirming the trustee's account; it was presented by a person interested, and sets out that the account is erroneous in that none of the sums of money with which the accountant stands charged were in fact received by him ; that none of the sums claimed to have been paid the petitioner were in fact paid her by the accountant, and that the accountant did not perform any services which would entitle him to the com-

missions claimed, viz.: $1,522.24; that in fact he did not act as trustee of the petitioner during the time covered by the account, but had declined to do so. This petition and specification of errors, is verified by affidavit.

If these allegations of error, going into the whole of the account, are sustained by the facts in the case, is not the petitioner within the act and entitled to a rehearing; and is not the court bound to grant a rehearing of the account and to give such relief as justice and equity may require? It seems to me this is all there is in the case for the present. The auditor may think that the charge of $1,522.24 is not excessive, and if the accountant actually handled the money he charged himself with, it would be a very modest charge; and it may be a moderate charge for responsibility merely, considered by itself; but this question can arise only on a review.

Of one thing there can be no doubt. Dr. Priestley continued to be the legal trustee under the will of Hugh Bellas of Mrs. Rodrigue, by appointment of a court of competent jurisdiction, and he was not discharged as such until 1882. During the time from 1872, when he filed what he designated as his final account and applied to the court to be discharged, up to 1882, when he was discharged on the second petition after filing the account in controversy, he had a right to demand and receive the one third of the income or interest of the estate of Hugh Bellas due Mrs. Rodrigue, and he was accountable for the same. But he did not do so. He became incensed at the allegations of Mrs. Rodrigue that no trustee was necessary, and that his commissions were too high and a useless diminution of her income. Acting upon what he deemed sufficient provocation, he declined to receive further remittances on account of Mrs. Rodrigue from the administrator of the estate. True, he did not press his petition for discharge and allowed it to be lost sight of; but after returning the administrator's check in 1872, with the declaration that he would have nothing further to do with Mrs. Rodrigue's affairs, he cannot be said to have acted in any sense as her trustee. Certain things he did relative to the business, but these were only for his own protection and not necessarily for the protection of the trust estate or the benefit of the cestui que trust. In fact, he did what he determined to do in the first place, and never changed his mind. He refused to have anything to do with Mrs. Rodrigue or her affairs.

All this has nothing to do with his responsibility as trustee, but it seems to me to be important in considering the right to charge himself with funds which by his own declination never came into his hands; to claim credit with payments which he never made, and to claim compensation as though he had managed the affairs of the estate. The account is in that form. It is fictitious and erroneous on its face. It is true that the receipts taken by Mr. Wolverton, the administrator, were taken as though the money had been paid by Dr. Priestley, through the administrator. But this was as fictitious as the account itself, and it is in evidence that Mrs. Rodrigue objected to dealing with the administrator in that way, and declined to sign many of the receipts. It does not appear that Dr. Priestley either authorized or directed Mr. Wolverton to pay Mrs. Rodrigue. He simply refused to receive and handle Mrs. Rodrigue's money. Mr. Wolverton requested Dr. Priestley to withhold his application for discharge until another trustee could be appointed, and took receipts in Dr. Priestley's name simply because he thought the will required the intervention of a trustee. After Dr. Priestley's refusal to act, the trusteeship itself became a fiction except as to the responsibility of the trustee, and this the trustee had a right and it was undoubtedly his duty to guard, by demanding the money due the cestui que trust and to receive and pay it out.

The auditor is of opinion that the account is erroneous; that the allegations of the petitioner have been sustained by uncontradicted evidence and that a review should be granted as a matter of right.

Counsel for the respondent contends that the petitioner is not entitled to a bill of review in law because she has not averred errors of law appearing on the face of the decree, or new matter that has arisen since the decree of confirmation, or that new evidence has been discovered, and cites Hartman's App., 36 Pa. 70, Milligan's App., 82 Pa. 395, and Scott's App., 112 Pa. 427. I cannot say the petitioner has not averred errors of law on the face of the account. It is necessary to aver errors on the face of the record or in the account merely, and I am of opinion that it is sufficient to aver that the accountant in fact never received the moneys with which he charged himself, and upon which he bases claims for commissions, the balance being against the cestui que trust.

### Auditor's Report.

It is also contended that the allegation of want of notice of the filing of the account has no evidence to support it, that it is denied by the answer and contradicted by the evidence before the auditor; and that, had there been no actual notice, the advertising of the account by the register is as effective and binding as actual notice; citing App v. Dreisbach, 2 R. 287. It has been found as a fact that actual notice has not been shown or denied, but that there was constructive notice, which in law is as binding, for all practical purposes. The act of 1840, however, does not by its terms require it to be shown that there was no notice, to entitle an interested party to a review. In the case of Simpson's App., 18 W. N. 175, which arose in this court, constructive and actual notice were shown, and the petitioner lived within a few yards of the register's office, yet the court allowed a review and the Supreme Court affirmed the decree. Where no intervening rights are affected, and where no equities have arisen to the contrary, I believe the matter of notice to be immaterial.

Counsel also contends that Dr. Priestley could not abandon the trust, and that if he did abandon it, as alleged, it did not relieve him from the responsibility of the proper appropriation of the funds by the administrator; citing Perry on Trusts, §§ 266–268; Webster v. Vandeventer, 6 Gray 428; 11 Paige, 319. This is undoubtedly the law. If Mr. Wolverton had squandered the money, the trustee would have been liable for it; and, moreover, he could have made no claim for commissions, and could not have charged himself with the funds as a basis of a charge against the cestui que trust. He may have estopped himself from charging anything, and I understand that the petitioner claims that he did so.

It is further contended that it was arranged between the administrator and the trustee that from 1872 the money should be paid direct to Mrs. Rodrigue by the administrator and receipts taken in the name and for the trustee by him. I have not been able to find this. There is no evidence before me that goes to show that there was such an agreement. On the other hand, the trustee appears as insisting upon his discharge and merely delaying the matter for a term when it seems to have been overlooked.

Again; it is contended that the trustee considered himself

as acting after April, 1872, and down to his final discharge, and responsible for the acts of Mr. Wolverton who was merely his agent. If Mr. Wolverton acted as the agent of Dr. Priestley after 1872, I would take a different view of the case, but I do not think the evidence warrants that conclusion. Dr. Priestley continued to be the technical trustee after that time, but he did not act.

I think I have now considered and disposed of the questions involved in the case at this stage. I must say, however, that I have been largely influenced by the position of the court and the Supreme Court in Simpson's Appeal, to which I have referred. It seems to me the circumstances of the two cases are quite similar. The allegation there was, that the accountant had charged himself with moneys which had never come into his hands, the petition being presented by the surety in the guardian bond. This was held to be an error on the face of the account. It was also shown in that case that the surety had notice of the filing of the account, and by examining it he would have discovered that his principal was charged with a large balance for which he, the surety, would be liable. He allowed the account to be confirmed; and yet the court struck off the decree of confirmation and allowed a rehearing, when it was shown that in fact the guardian had never received the larger part of the moneys with which he was charged. In this case, it is the beneficiary who is charged with a balance and makes the application for a rehearing. She alleges that the moneys charged on the debtor side of the account, upon which the balance against her is predicated, never came into the hands of the accountant, and that he never performed any of the services indicated by the account. I cannot distinguish the two cases, and am therefore constrained to say that in my opinion the decree of confirmation of the account of Dr. Joseph Priestley, trustee of Ann C. Rodrigue, filed July 15, 1882, should be stricken off and a rehearing of the whole of said account granted.

Various exceptions filed to his report by the respondent were overruled by the auditor. Said exceptions being filed with the report and renewed, the court, ROCKEFELLER, P. J., filed an opinion, which after reviewing the facts concluded:

It is strenuously contended that the confirmation cannot be opened and that the petition ought to be dismissed:

First, because there is no error of law apparent on the face of the decree. If this is so, the objection is a good one, and I admit that I am not entirely clear in regard to it. The facts, however, are, that Dr. Priestley did not in any sense act as trustee for Mrs. Rodrigue, after April 9, 1878. He having refused to act, although not discharged by the court, a written agreement was put on record, signed and executed by the cestui que trust, who was sui juris, and her family, that all moneys were to be paid directly to her. After that date all moneys were paid directly to her and not to the trustee, nor was any paid by him to her. The account, however, on the face of it, shows that commissions were charged on all sums paid after that date. It is claimed that this is not error apparent on the face of the decree. I think it is as much so as was the case in Simpson's Appeal, decided in this court and affirmed by the Supreme Court, and I am sure there are many other cases in the books where the courts have looked beyond the record in the case, especially [into] other records for the facts, in order to ascertain whether there was error apparent on the face of the record.

Second, it is claimed that there is no new matter arising subsequent to the decree, and, third, no after-discovered evidence. Dr. Priestley had not actively acted as trustee since filing what he styled his final account in 1872, and Mrs. Rodrigue doubtless never expected another account to be filed. She lived in another state and did not discover that an account had been filed until 1887, when she was called upon to pay the balance in favor of Dr. Priestley, as it appeared in the account. This balance arose from the charge of the trustee for commissions. Of course, the presumption is that the legal notices were given of the filing of the account, and therefore Mrs. Rodrigue had constructive notice and this perhaps was all that was necessary. She was not entitled to actual notice. She has not produced what is considered strictly after-discovered evidence, that is, evidence discovered since the decree, which could not by diligence have been discovered and produced at the time. But the fact that she had no actual notice of the filing of an account which she had reason to believe was not

necessary and never would be filed, will cause a court to consider carefully all other matters that may by law afford relief.

I am of opinion that Dr. Priestley ought to be allowed commissions or compensation for responsibility on account of the trust fund received and paid out from May, 1872, to April, 1878, inclusive, and that what is said in the per curiam opinion of the Supreme Court in Stevenson's Est., 4 Wh. 103, is sound, except that in this case under the circumstances, perhaps two per centum is sufficient. I am further of opinion that from and after April 9, 1878, no commissions ought to be allowed.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

The decree confirming the account is opened and a rehearing or review of the whole account granted as prayed for.

The account was then referred by the court to Mr. Hill, the auditor, for re-statement. On the hearing, testimony was submitted showing facts which induced the auditor to report alternative statements of the account, one of which, A, allowed the accountant credit for commissions for services, responsibility, trouble and expenses, including attorney fees due to his legal advisers, $1,522.24; the other, B, allowing credit to the accountant, separately, for the same attorney fees, and commissions at 2 per cent on the amount of the money received from the administrator c. t. a. and paid over by him directly to Mrs. Rodrigue from May 1, 1872, to April 9, 1878.

Upon exceptions filed to this report by both the petitioner and the respondent, the court adopted statement B, reported by the auditor, striking out, however, one attorney fee and increasing the commissions to 3 per cent, making them amount to $980.34. Thus modified, the statement B was confirmed and a decree entered accordingly.

Pending the proceedings before the auditor, Mrs. Ann C. Rodrigue died, and letters of administration upon her estate were granted to Ephraim Cutter, and upon the entry of a final decree by the court, Mr. Cutter, administrator, took the appeal to No. 242, specifying that the court erred in overruling the several exceptions filed by the petitioner, and in allowing any commissions whatever to the accountant.

Mrs. Hannah H. Priestley, administratrix, took the appeal to No. 371, specifying that the court erred in overruling the

several exceptions filed by the respondent, and in opening and reviewing the account, and reducing the commissions allowed to the accountant.

*Mr. S. P. Wolverton* (with him *Mr. L. H. Kase*), for Ephraim Cutter, administrator, appellant.

*Mr. Harold M. McClure*, for Mrs. Hannah H. Priestley, appellant.

No. 371.

OPINION, MR. CHIEF JUSTICE PAXSON:

The account of Dr. Joseph Priestley, which is the cause of the present contention, was confirmed absolutely December 6, 1882, and on the 11th day of the same month he was discharged as trustee by the court on his own petition. He died on March 10, 1883, and letters of administration were granted to Hannah H. Priestley, the appellant, on March 28, 1883. More than four years after Dr. Priestley's death, Mrs. Rodrigue, the appellee, presented the petition in this case for a review of his account as trustee. The whole contention was about a matter of commissions, the trustee having charged $1,522.24, being two per cent upon the money passing through his hands for a number of years. It was alleged that for a number of those years Dr. Priestley did not actually receive and disburse the money, owing to differences between himself and Mrs. Rodrigue, which it is not necessary to refer to in detail; that during this time he refused to act as trustee, or to have any business intercourse with his cestui que trust, and the money was paid by S. P. Wolverton, Esq., the administrator, directly to Mrs. Rodrigue. The receipts therefor were taken in the name of Dr. Priestley as trustee. The court referred the petition to an auditor, who took a large amount of testimony, resulting in the granting of the review, a subsequent re-statement of the account, with a decree of the court below reducing the commissions to $930.84. The principal question raised upon this appeal was the propriety of granting a review. This underlies the entire case.

After a man has been dead for four years, and more than four years after the confirmation of his account as trustee, the reasons should be weighty to induce a court to grant a review and open the account to further litigation. Especially should

the delay be clearly and satisfactorily accounted for. In such case there should be no laches: Scott's App., 112 Pa. 427. In her petition the appellee alleges that "she resides in New Jersey, had no notice of the filing of the account, and only recently learned of its existence." This averment is evasive. It should have stated when she learned of it. The appellant in her answer distinctly avers that the account "was filed with the actual and legal knowledge of the petitioner." It was conceded she had legal notice; there was no evidence as to actual notice before the auditor, and this point must be disposed of upon the pleadings. As no evidence was offered to contradict the answer, it must stand as conclusive. This is the rule in equity, where, as here, the answer is responsive: Eaton's App., 66 Pa. 483; Rowley's App., 115 Pa. 150. Aside from this, legal notice was sufficient. "The notice directed by law must be good and effectual, and we ought not to hear any complaints on that subject:" App v. Dreisbach, 2 R. 287.

It was urged, however, that a review is a matter of right under the act of October 13, 1840, P. L. [1841] 1, if applied for within five years, and that in such cases no question of notice or laches arises. If we concede the truth of this position it does not affect the case. I have not referred to those matters for the purpose of showing that they would bar the right to a review within five years. It is not necessary in this case to decide such a point or discuss it at length: where, however, there has been laches, and the party complaining had both legal and actual notice of the filing of the account, it would be a persuasive reason why a court, exercising equity powers, should move slowly, and see that the case clearly comes within the act of 1840, and refuse it altogether where the application is ex gratia.

It has been ruled, in a line of cases, that an account settled and confirmed can only be reviewed for error of law apparent on the face of the record, or for new matter which has arisen since the decree. As a matter of grace, a review may be granted for new proof, discovered after the decree, which proof could not possibly have been used at the time when the decree was made: Story's Equity, § 104; Riddle's Est., 19 Pa. 431; Russell's App., 34 Pa. 258; Hartman's App., 36 Pa. 70; Milligan's App., 82 Pa. 389; Scott's App., 112 Pa. 427. This

court early adopted these principles of equity as applicable to the act of 1840, and they have never been departed from in a single instance to my knowledge. It was said by Mr. Justice STRONG, in delivering the opinion of the court in Hartman's Appeal, supra: "The construction given by the court below to the act of October 13, 1840, was entirely accordant with that which the court has given in numerous cases. It was first announced in Riddle's Est., 19 Pa. 433, repeated in Bishop's App., 26 Pa. 470. It was also recognized in Stevenson's App., 32 Pa. 318, and in Russell's App., 34 Pa. 258. The construction is now too firmly settled to be disturbed by us." And the authorities I have cited show that the same construction has been maintained to the present time. The rule in equity is, that a bill of review will not lie for an error of law, unless such error appears on the face of the decree. Mr. Justice STORY, in commenting upon this rule in Whiting v. Bank of the United States, 13 Pet. 13, said: "That is true, in the sense in which the language is used in the English practice. In England the decree always recites the substance of the bill and answer, and pleadings, and also the facts on which the court founds its decree. But in America the decree does not ordinarily recite either the bill, answer, or pleadings, and generally not the facts on which the decree is founded. But with us the bill, answer, and other pleadings, together with the decree, constitute what is properly considered the record; and, therefore, in truth the rule in each country is precisely the same in legal effect, although expressed in different language, viz., that the bill of review must be founded on some error apparent upon the bill, answer, and other pleadings, and decree; and that you are not at liberty to go into the evidence at large in order to establish an objection to the decree, founded on the supposed mistake of the court, in its own deduction from the evidence." And in Putnam v. Day, 22 Wall. 60, it was said by Mr. Justice BRADLEY: "We think the rule to be well established, and a wholesome one, that the proofs cannot be looked into on a bill of review. This was expressly held in Whiting v. Bank, 13 Pet. 6.

It follows, from what has been said, that when Mrs. Rodrigue presented her petition for a review of Dr. Priestley's account, it was competent for the court below to examine the entire record; and if it had appeared from the will of Hugh

Bellas, and the codicil thereto, the record of the appointment of the trustee, the petitions for discharge and the action of the court thereon, the account filed by the trustee and the confirmation thereof, that an error in law had been committed, and that such error had been distinctly pointed out in the petition, the court below would have been justified in granting a review.   Unfortunately for the appellee, no error of law is set forth in her petition, or appears anywhere in the record.   It was a question of fact pure and simple, that the accountant had claimed commissions on money which had not passed through his hands.   This was an objection which could as well have been taken when the account was filed, as it could several years after its confirmation and the death of the accountant. The act of 1840 was never intended to open accounts for the re-trial of questions of fact, years after they have been passed upon by a competent tribunal.   The question of Dr. Priestley's commissions was adjudicated by the Orphans' Court years ago; it was a question distinctly appearing upon the face of the account; it was a challenge to any person objecting to come in and dispute it.   As was said in Scott's Appeal, supra, "Something is due to the finality of judicial proceedings."   As there was no error of law upon the face of this record, the appellee was not entitled to a bill of review as a matter of right; as there was no allegation of after-discovered testimony, she was not entitled to it as a matter of grace.

The learned judge below evidently relied upon Simpson's App., 18 W. N. 175, as authority for granting this review.   An examination of that case, however, discloses the fact that there was one, if not two, errors of law apparent upon the face of the record.   The account as guardian was prematurely and illegally filed, and the balance decreed to Mary V. Simpson was not coming to her, under the terms of her father's will, at the time the decree was made, and might never have been due her.   It follows that the review in that case was strictly in accordance with our construction of the act of 1840.   The review in this case was a departure from Milligan's Appeal, Scott's Appeal, and the cases cited.

> The decree of the court below, granting a bill of review, and all proceedings subsequent thereto, are reversed and set aside at the costs of the appellee.

Statement of Facts.

No. 242.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an appeal from the same decree as Priestley's Appeal, just decided. In the latter appeal, we reversed the order of the court below granting a review of the account, and all the subsequent proceedings. The effect of this is to restore the confirmation of the account in controversy. The court below awarded $980.34 to the accountant as commissions, which, together with some other small credits, left a balance due the accountant of $1,042.50. This allowance is assigned for error upon this appeal. All that was said in Priestley's Appeal is applicable here. The question is precisely the same, and it appears that neither party was satisfied with the decree of the court below. The reversal of the decree in Priestley's Appeal necessarily requires its affirmance in this appeal.

The decree is affirmed upon the appeal of Ephraim Cutter, administrator, and the appeal dismissed at the costs of the appellant.