# Lorch's Estate.

*Principal and guaranty — Contract — Guaranty — Continuing guaranty—Revocation—Notice—Death—Constructive notice.*

1. Where a partner enters into a written guaranty for the payment of debts of the firm thereafter contracted, his estate is liable for debts due at the time of his death, or for which he was then personally bound, though payable thereafter.

2. If, under a guaranty for future sales, the consideration passes at each time a separate sale is made, and the contract is therefore severable, death ends the liability, as to transactions occurring after actual or constructive notice thereof has been received.

3. Where a guarantor of future sales dies, and the evidence as to whether the obligee had actual notice of the death is weak, but

it appears that the executors duly advertised the death as provided by law, with resulting constructive notice to the obligee, sales made after the death of the grantor will not be binding on his estate.

4. Where constructive notice is provided for, it has the same effect as actual notice, and binds equally.

5. The knowledge of the appointment of an executor or administrator, made, of course, only after the filing of an affidavit of death, is effective as to all parties, whether they have actual information of the contents of the affidavit or not.

6. Where a guarantor of future sales dies, his estate becomes liable for all sums due on the guaranty to the limit fixed by the agreement, including sums which become due on contracts in force when he died, though the consideration passed thereafter. When all such claims are liquidated, the liability ceases.

*Contracts—Payments—Trade acceptances.*

7. Trade acceptance will be treated as credits when given, and not as of the time when actually satisfied, where it appears that such was the intention of the parties.

*Contracts—Payments—Running accounts—Application of payments—Earliest items.*

8. Where payments are made on a running account, they will be applicable to liquidate the earliest items, in the absence of an allocation to some particular indebtedness.

Argued October 8, 1925. Appeal, No. 149, March T., 1925, by American Wholesale Corporation, from decree of O. C. Allegheny Co., Dec. T., 1924, No. 157, dismissing claim of American Wholesale Corporation, in estate of Louis Lorch, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Claim to participate in distribution of assets. Before MILLER, P. J.

The opinion of the Supreme Court states the facts.

Claim dismissed. American Wholesale Corporation, a claimant, appealed.

*Error assigned* was, decree, quoting record.

*Blythe S. Weddell,* with him *Frank R. S. Kaplan,* for appellant.—The court erred in finding that the death of the guarantor ipso facto revoked the guaranty: Nat. Bank v. Thomas, 220 Pa. 360; Gay v. Ward, 67 Conn. 147; Hyland v. Habich, 150 Mass. 112.

The court erred in finding that the advertising of the granting of letters by the administrator charged appellant with knowledge of the death of Louis Lorch and effected a revocation of the contract: Fidelity Co. v. Bank, 97 Ga. 634; Walkden's Case, 237 Mass. 115.

*James Milholland,* with him *Alter, Wright & Barron,* for appellee.—If this guaranty could be revoked during the lifetime of the guarantor by notice, we think his death revokes the guaranty ipso facto: Slagel & Co. v. Forney, 22 W. N. C. 457; Jordan v. Dobbins, 122 Mass. 168; Hyland v. Habich, 150 Mass. 112; Michigan State Bank v. Leavenworth, 28 Vt. 209; Aitken v. Lang, 51 S. W. Rep. 154.

OPINION BY MR. JUSTICE SADLER, November 23, 1925:

Louis and George E. Lorch were partners, and conducted a mercantile business under the name of Lorch Bros. From time to time purchases were made from the American Wholesale Corporation of Baltimore, represented by an agent in the City of Pittsburgh. For the protection of the seller, a contract of guaranty was executed by the two brothers on August 23, 1923, having for its purpose the insuring of the payment of all sums then due by the firm, or which might become payable to the extent of $20,000, binding the heirs, executors and administrators of the copartners, who signed as individuals. Provision was made therein for the termination of further liability, by the giving of written notice to that effect. Certain balances were owing when the contract was made, and other sales followed, not only to the date of the death of Louis, but also until the bankruptcy of the firm, more than a year thereafter, at which

time there was payable from it to the present claimant a sum in excess of $70,000.

On October 30, 1923, Louis, one of the guarantors, died, and letters of administration on his estate were granted November 23d to the Braddock Trust Company. As required by law, due notice of appointment was given, calling upon all creditors to present their claims. Its final account was presented to the orphans' court, confirmed, and distribution ordered January 26, 1925. The accountant first learned of the existence of the decedent's guaranty, above referred to, on the day previous to the audit, and immediately notified by telephone the American Wholesale Corporation of the time fixed for the meeting. Claiming to have had no previous knowledge of the death, it asked that the decree of distribution be opened, and opportunity be given to substantiate the demand made against the estate. This was permitted, and hearings were had later. From the evidence presented, the learned court below found that all sums legally chargeable to the decedent by reason of the contract of indemnity had been fully paid and satisfied and it is from this adjudication that the present appeal is taken.

The first question considered by the court below, in determining the possible liability, was the date to which amounts charged by the claimant should be calculated. Liability for amounts due at the time of death, or for which the decedent was then personally bound, though payable thereafter (Chestnut St. Tr. Co.'s Assd. Est., 217 Pa. 151), was clearly to be considered. It was further insisted that all indebtedness of the partnership to the date of bankruptcy, more than a year later, was to be included, or at least that shown to be due on March 19, 1924, when the corporation acknowledged the receipt of a formal notice of death.

Confusion is found in the cases dealing with the question presented. This can be largely clarified by determining first whether the contract was revocable during

life, though continuing until notice given by the guarantor, or whether the obligation be considered as one which is entire and indivisible. If the latter be the proper construction of the guaranty, the responsibility for advances made after death continues until the completion of all the acts contemplated: Shackamaxon Bank v. Yard, 143 Pa. 129; National Bank v. Thomas, 220 Pa. 360; Kernochan v. Murray, 111 N. Y. 306, 18 N. E. 868. If, however, the consideration passes at each time a separate sale is made, and the contract is therefore severable, death ends the liability as to transactions occurring after actual or constructive notice thereof has been received: National Eagle Bank v. Hunt, 16 R. I. 148, 13 Atl. 114, 115. This is the rule recognized by all of the American decisions, the reason being well expressed in Gay v. Ward, 67 Conn. 147, 34 Atl. 1025, and is not affected by the fact that the contract provided the revocation should be in writing: Gordon v. Dobbins, 122 Mass. 168.

The decease of the guarantor in a divisible contract of indemnity revokes the obligation as to advances thereafter made, at least where the guarantee is made aware of the changed circumstances: Slagle & Co. v. Forney's Exrs., 22 W. N. C. 457, sub nom. Slagle & Co. v. Amberson, 1 Mona. 30. Whether the fact of death must be made known to the one advancing credit before liability ends has, however, caused a divergence of opinion. In some states it has been held,—though in several the statement was unnecessary, as the facts disclosed knowledge,—that notice, actual or constructive, must be shown to relieve from liability, and until that is received responsibility continues, but not beyond: Gay v. Ward, supra; National Eagle Bank v. Hunt, supra; In re Kelly, 173 Mich. 492, 139 N. W. 250; Valentine v. Donohoe-Kelley Banking Co. (Cal.), 65 Pac. 381; Exchange National Bank v. Hunt (Wash.), 135 Pac. 224. In other jurisdictions, it is decided that death ipso facto ends the relationship as of the date thereof, it be-

ing said, with reason, that "it is no hardship to require traders, whose business is to deal in goods, to exercise diligence so far as to ascertain whether a person upon whose credit they are selling is living": Aitken v. Lang's Adm. (Ky.), 51 S. W. 154; Jordon v. Dobbins, 122 Mass. 168; Hyland v. Habich, 150 Mass. 112; Michigan State Bank v. Leavenworth's Estate, 28 Vt. 209. Only one Pennsylvania case has been called to our attention, nor has research disclosed others, in which the exact question has been considered, for in Slagle & Co. v. Forney's Adm., supra, there was admittedly actual knowledge. In Illinois Roofing Co., v. Gorton, 19 Pa. C. C. 124, Judge MORRISON, later of the Superior Court, followed the Massachusetts rule, holding the date of death controls, irrespective of proof of notice of that fact. Whichever view is taken, the claimant could not make demand for any advances after its agent was informed of the event, and, under the facts appearing here, it is immaterial whether October 30, 1923, the day of death, or March, 1924, the time when the agent was advised, is taken as the period ending further responsibility.

The evidence to show the claimant had no notice of Lorch's decease until March 19, 1924, is "not very convincing," as stated by the court below. An examination of the record shows the agent fixed the time as of the date given, "or may be a few days previous to this." That it was obtained before March 3d is a fair inference, in view of the fact that a new guaranty covering accounts of the firm was then taken from the surviving partner, George, who had been a joint-party in the previous obligation with his deceased brother, Louis. At that time, as we shall see later, the balance of indebtedness was practically liquidated,—it had been entirely paid to February 1st. After the new bond was given, an additional line of shipments was begun, the value of which, less credits, furnishes the basis for the claim now presented. To say that no information as to the death

was given until the date fixed by appellant also over-looks the fact that constructive notice was furnished by the administrator to all creditors in the manner pre-scribed by law.

Section 10 of the Fiduciaries Act of 1917, provides for advertisement by an administrator, fixing the man-ner in which this shall be done, and section 49 (d) di-rects that claims not presented at the audit of an account filed shall be barred. In the first instance, no actual notice to the creditor is required, and in the sec-ond, only where the demand has already been presented to the personal representative before distribution, when so required by rules of court: Section 46 (c). The knowledge of the appointment of the administrator, made, of course, only after the filing of an affidavit of death, is effective as to all parties, whether they have actual information of its contents or not. "Where con-structive notice is provided for, it has the same effect as actual notice, and binds equally. Whether actual in-formation thereof came to the party to be charged is im-material. Where facts exist authorizing the application of the doctrine of constructive notice, the inference of notice is not rebuttable": 20 R. C. L. 342. "If the proper statutory notice has been given, the creditor's want of actual notice is not material and will not affect the running of the non-claim statute against his de-mand": 24 C. J. 344. "The notice given, agreeably to the rules of court, and more especially by direction of the acts of assembly, must have the same effect as actual notice, and bind equally": App v. Dreisbach, 2 Rawle 287, 304. This rule has been frequently applied where the advertisement of the filing of an account is the only information putting the creditor on inquiry: Stoever's App., 3 W. & S. 154; Priestley's Est., 127 Pa. 420; Pat-terson's Est., 234 Pa. 128. The claimant here was thus warned and bound by the information that letters had been granted. The duty devolved upon any one affected to make the necessary investigation to discover the true

situation: Arnold v. Carroll, 83 Pa. Superior Ct. 308; Tabor Street (No. 1), 26 Pa. Superior Ct. 167. Under the facts appearing, we are constrained to hold that the appellant had constructive notice of the death of the guarantor, given by the advertisement in 1923.

But irrespective of the time when the guaranty shall be considered revoked, there is a vital reason why no recovery should be allowed here. The guarantor's estate was liable only for sales made on the faith of the contract until legally terminated, and, if any balance remained unpaid, it was essential that this be proven, and it was not. Lorch's estate became liable for all sums due by the partnership on the running account to the limit fixed in his agreement, including sums which became due on contracts in force when he died, though the consideration passed thereafter. When all such claims were liquidated, the responsibility ceased. On October 30, 1923, the date of death, a balance was due, and, subsequently, bills of the firm became payable. On February 1, 1924, the entire charges were $18,669.76, with credits of $8,114.67. On the 14th of that month, seven trade acceptances were given to the amount of $10,555.09, totaling the exact sum shown to be due, and all of these were paid on the days called for by their terms.

It is now insisted these credits should be given as of the date the acceptances were actually satisfied, instead of when delivered. That they were treated as payments when forwarded and accepted is clearly apparent from an examination of the sworn proof of the same claim, made in subsequent bankruptcy proceedings against the firm, wherein the charges begin February 1st, and no credit is given for the amount of the obligations transferred on the 14th, and, as stated, paid later. That the settlement was in full to the date mentioned, is confirmed by the positive testimony of the bookkeeper. This conclusion, reached by the learned court below and now approved, is not affected by a consideration of the

testimony of appellant's agent, who seemed to claim the payments of February·14th were to be on account of some future orders to be given, though his evidence is lacking in clearness and definiteness. It will be noticed that the business transactions of the parties had been practically ended at the time referred to, and that there had been but few sales in the three months preceding. It was not until after the settlement, and the giving of a new guaranty by the survivor, that the business dealings were resumed to any extent.

Even if there had been no settlement February 1st, this was a running account, and payments largely in excess of any liability of the decedent were later made, and the sums so given necessarily were applicable to liquidate the earliest items, in the absence of an allocation to some particular indebtedness: Pardee v. Markle, 111 Pa. 548; 28 C. J. 1005. Applying this rule to the only two charges billed after February 1st, and outstanding on March 1st, amounting to $34.73, it must be held they were liquidated by a subsequent cash payment, appearing in the account filed as having been made a few days later. We are convinced that, irrespective of any legal question of the date to be considered as fixing the time of revocation of the guaranty, there can be no recovery in this case.

The decree of the court below is affirmed at the costs of appellant.