## Thomas Estate

Before Boyle, P. J., Cox, Rahauser and Wolk, JJ.

*Allen N. Brunwasser*, for petitioners.

*Harold E. Harper*, for respondent.

*Herbert R. Hahn*, for accountant.

RAHAUSER, J., March 25, 1959.—This matter comes before the court en banc on the preliminary objections filed to a petition for review of a decree of distribution in the above estate.

Rufus Thomas died intestate May 31, 1953. The Coraopolis Trust Company was appointed administrator of the estate of the said decedent. The administrator filed its account and the same came up for audit December 21, 1954. At the audit of the account two claims were presented against the estate: One of Mrs. Alease Jones in the amount of $1,890, and the other of Mrs. Ida Wilder Dockery in the amount of $15,298. The account showed a balance of $8,941.31. January 11, 1955, was set for a hearing on the claims.

The petition for distribution set forth that the administrator had no knowledge of any known heirs. The court appointed Leo J. Kelly, Jr., Esq., a member of the bar, as master to search for heirs and trustee ad litem for any and all persons who may be entitled as heirs and next of kin to share in the estate of the above decedent. The administrator notified the Commonwealth of its failure to find heirs and the Commonwealth's representative, Deputy Attorney General John V. Snee, was present at the hearing.

After the taking of testimony on the claims, but before the court entered a decree, counsel for the parties executed a stipulation as follows:

"WHEREAS, at the audit of the administrator's First and Partial Account in the above entitled estate, Ida Wilder Dockery presented a claim for personal services and money advanced and Alease Jones presented a claim for personal services, and

"WHEREAS, the accountant reported to the Court it could not find any living heirs of the decedent, whereupon the Court appointed Leo J. Kelly, Jr., Esq., as master and guardian ad litem to search for and to

represent the interests of any persons who might be an heir entitled to inherit through or from decedent, and

"WHEREAS, the Commonwealth of Pennsylvania as a possible heir through escheat proceedings was notified and was represented by an assistant attorney general, and

"WHEREAS, a full hearing on said claims was had before this Court, at which hearing witnesses appeared and evidence was taken and the proof of said claims was produced in amounts in excess of the balance for distribution in said estate, and

"WHEREAS, all parties in interest have agreed upon a fair and amicable settlement of said claims:

"Now, THEREFORE, it is stipulated and agreed as follows:

"1. The claim of Ida Wilder Dockery for personal services rendered and reimbursement of moneys owing and advanced shall be allowed in the amount of Nine Thousand Two Hundred ($9,200.00) Dollars.

"2. The claim of Alease Jones for personal services performed shall be allowed in the amount of One Thousand ($1,000.00) Dollars. . . .

"4. The First and Partial Account shall be amended to be the first and Final Account.

"5. A Decree of Distribution shall be entered in accordance with this Stipulation and Agreement. . . ."

In accordance with the above stipulation, the court on February 8, 1955, entered a decree allowing and prorating the Jones claim in the amount of $918.43 and the Dockery claim in the amount of $7,949.57 and making a distribution of the entire estate amounting to $9,515.67 in personalty and $500 in realty.

On January 6, 1959, on petition of six heirs, the children of Samuel Thomas, a brother of decedent, the court issued a citation on the Coraopolis Trust Company, Ida W. Dockery and Alease Jones to show cause

why the proceeding should not be reviewed and the entire case reopened.

The petition for citation alleged that claimant, Ida W. Dockery, knew of the heirs of Rufus Thomas, that she knew that Samuel Thomas was the brother of decedent and that he had six children, Beatrice Thomas Jackson, Margaret Thomas, Mary Thomas Caldwell, Florence Thomas Smith, Haywood Thomas and Henry Thomas. All the above are petitioners and all allege that they are the heirs of decedent.

The seventh allegation of said petition alleges the following:

7. "Even though this was known to Ida W. Dockery, she falsely and fraudulently and in an attempt to present claim for ten thousand dollars without any opposition from any heirs or interested parties, stated there were no Heirs at Law to said Rufus Thomas."

The substantial allegations of petitioners with which this court must deal in determining whether or not the heirs are entitled to a review of the decree of this court dated February 8, 1955, deal with the alleged failure on the part of Ida W. Dockery to inform the administrator, the master and the court of the alleged heirs.

The administrator filed preliminary objections as follows:

1. "The petition upon which a review is asked in this case does not aver facts entitling petitioners to the relief sought."

2. "The petition fails to set forth specifically as required by the Act of Assembly of April 18, 1949, P. L. 512 Art. 7, Sec. 721 (20 PS 320-721) any alleged errors in the account, or of the adjudication or of the decree of distribution."

3. "Under the aforesaid Act of Assembly of April 18, 1949, P. L. 512, Art. 7, Sec. 721 (20 PS 320-721), the court is powerless to grant a review of the decree

of distribution in this case as distribution has been made by the personal representative of all the property in this estate in accordance with the decree of distribution of this court as the records in this case disclose."

4. "The petition does not aver that equity and justice require that the relief prayed for be granted."

5. "The petition does not allege any fraud upon the part of the personal representative of the decedent or any dereliction in the duties imposed upon it as such personal representative."

6. "The petition avers no errors on the part of the court in its decree of distribution or any fraud or misconduct or neglect on the part of the administrator of the estate of the decedent, but avers fraud on the part of one of the distributees alone."

7. "Petitioners are guilty of laches in that they failed to take timely action after discovering the alleged fraud."

8. "This court is without jurisdiction under the facts alleged to entertain the petition in this case."

Counsel for Ida W. Dockery also filed preliminary objection raising substantially the same questions as above; paragraphs 6 and 8 point up certain matters involved and are as follows:

6. "To hold that Petitioners have a right to contest claims of creditors presented against this estate would impose on this Court a preliminary collateral inquiry as to whether Petitioners are heirs and as to whether in fact they have a possible interest as distributees."

8. "Fraud is not properly alleged. No fraud is alleged against the personal representative. The only fraud alleged against Ida W. Dockery is that the Application for a Creditor's Petition stated 'that to the best of Affiant's knowledge, the decedent is survived by no heir at law', which Petitioners allege to be contrary to fact. The Petition and the record disclose that the Court was not misled nor deceived by this aver-

ment, as the Court appointed Leo J. Kelly, Jr., on January 7, 1955, as Master to search for unknown heirs and next of kin of Rufus Thomas and as Trustee ad Litem for any and all persons who may be entitled as heirs and next of kin to share in this estate."

Where preliminary objections are raised, the facts pleaded must be taken as admitted insofar as the record does not show the contrary to be true.

The fraud as it is alleged on the part of Mrs. Ida Dockery was "an attempt to present claim for ten thousand dollars without any opposition". The trustee ad litem stated that decedent had brothers and a sister and indicated that decedent probably had some heirs whose whereabouts were unknown. The record clearly shows that the trustee ad litem and the representative of the Commonwealth, its Deputy Attorney General, John V. Snee, were present at the hearing and opposed the claim.

The record indicated that the claim of Ida W. Dockery was proved by credible witnesses and that a substantial part of the claim was dependent on a contract that was properly made a part of the record. The contract is as follows:

## "AGREEMENT

"Made and entered into this 20th day of April, 1950, by and between RUFUS THOMAS and JULIA THOMAS, his wife, of the Borough of Coraopolis, County of Allegheny and State of Pennsylvania, parties of the first part,

## "AND

"IDA WILDER DOCKERY of the same place, party of the second part.

"WHEREAS the parties of the first part hereto are the owners of a piece or parcel of land situate in the Borough of Coraopolis, County of Allegheny and State of Pennsylvania, known as #600 Seventh Avenue and #709 Chess Street, there being erected on said lot a

two story brick and frame dwelling and a frame dwelling and,

"WHEREAS the parties of the first part hereto are in ill health and are in need of care and attention, and

"WHEREAS the party of the second part is the daughter of Julia Thomas, one of the parties of the first part hereto, and she has agreed to remove from her present home in Massillon, Ohio, and take up her residence with the parties of the first part hereto and care for and minister to them during the remainder of their natural lives, and

"WHEREAS the property of the parties of the first part hereto is encumbered with a mortgage held by the Lincoln Savings & Loan Association of the Borough of Carnegie, Allegheny County, Pennsylvania, on which there is due the sum of approximately $2089.00, which mortgage the parties of the first part hereto are unable to pay and the said mortgage is in default.

"Now THEREFORE IT IS AGREED by and between the parties hereto that the party of the second part shall make her home with the parties of the first part hereto, and minister to their needs and care; that she will collect the rents and income from the frame dwelling on said premises and likewise she will receive the pension and social security payments of approximately $99.85 a month payable to Julia Thomas, and out of said funds she will pay the living expenses of maintaining said household, pay for the upkeep of the premises, pay the taxes thereon, and the payments due on said mortgage. Should the income as aforesaid be insufficient to make such payments, she may advance such sums as may be necessary from her own resources, and the money owing her shall be repaid to her with interest upon the decease of the last survivor of the parties of the first part hereto. The parties of the first part further agree that unless they devise the above described premises by their wills to the party of the

second part, that she will be entitled at the death of the last survivor, to be compensated for her services in attending to them and managing said household, to the sum of $5.00 a day for the duration of her attendance to them, with the right to claim additional compensation in case either of the parties of the first part, due to illness, require unusual attention and care.

"RUFUS THOMAS          [SEAL]
(Signed)
her
JULIA (X) THOMAS     [SEAL]
mark

"C. L. Richey
— as to all —
to mark of
Julia Thomas

. . . . . . . . . . . . . . . .     [SEAL]

"Witness:

RUFUS THOMAS     (Signed)
W. P. DOCKERY     (Signed)

"*Commonwealth of Pennsylvania* ⎫
*County of Allegheny*          ⎬  ss.:

"On this 20th day of April, 1950, before me, C. L. Richey, a notary public, in and for the above named County and Commonwealth, personally appeared, Rufus Thomas and Julia Thomas, his wife, known to me to be the persons whose names are subscribed to the within instrument, and they acknowledge that they executed same for the purposes therein contained.

"In witness whereof, I hereunto set my hand and official seal,

C. L. RICHEY
[SEAL]                 C. L. RICHEY,          (Signed)
Coraopolis, Pa.         C. L. Richey, Notary Public"

This contract was signed by the parties to be charged; their signatures were properly proved. This was substantial evidence in support of the Dockery

claim. It was properly admissible in evidence under The Notary Public Law of August 21, 1953, P. L. 1323, sec. 20, 57 PS §166, which provides as follows:

"The official acts, protests and attestations of all notaries public, certified, according to law, under their respective hands and seals of office, including the dishonor of all bills and promissory notes, and of notice to the drawers, acceptors or endorsers thereof, may be received and read in evidence, as proof of the facts therein stated, in all suits now pending or hereafter to be brought. Any party may be permitted to contradict by other evidence any such certificate."

In addition to this contract, reputable witnesses proved other elements of Mrs. Dockery's claim beyond a reasonable doubt. Dr. L. H. Sweterlitsch proved that Mrs. Ida W. Dockery, who was no blood relative of decedent, took care of him, rendered practical nursing services around the clock from November 11, 1952, until May 31, 1953. His testimony, in part, is as follows:

"Q. You say on one occasion you recommended he go to the hospital?

"A. Yes.

"Q. And he refused to go?

"A. He refused to go.

"Q. Are you familiar with the personal acts and administration that Mrs. Dockery rendered, such as the fact that she was taking care of him?

"A. Well, when you consider the plight of Mr. Thomas, it would require constant care.

"Q. And would you just elaborate a little more on what you mean by constant care, and what sort of care you would mean by that?

"A. Well, he was most of the time practically bedfast, couldn't get around; he was very short of breath; he couldn't help himself very well; he had to have his bodily functions taken care of; he couldn't visit the

bathroom on his own accord, most of the time; probably there were times when he could; but he was practically helpless.

"Q. Do you know at times he soiled himself and had to be changed?

"A. Definitely so.

"Q. And attention was required, just like a baby at times?

"A. At times.

"Q. Who rendered this attention to him?

"A. Mrs. Dockery.

"Q. At times was he able to go to bed, or sit up in chairs?

"A. He would be sitting up in a chair, in reclining position. I remember having him in a sun parlor, where they had one of these chaise lounges, where I would see him most of the time."

The record indicates on the testimony of Mr. John Carlos, a neighbor, Rudolph Gentry, Mrs. Audie Redwine, that Mrs. Ida W. Dockery persuaded her husband, the Rev. W. P. Dockery, to resign his pastoral charge in Massillon, Ohio, and return to Coraopolis to care for decedent, Rufus Thomas, and his ailing wife, Julia Thomas.

The record is clear that under the written contract Ida W. Dockery was entitled to compensation for general services at the rate of $5 per day for 1,137 days from April 20, 1950, to May 31, 1953, making a total of $5,685.

The agreement is clear that Ida W. Dockery was entitled to be paid for extra services, that she was entitled to extra compensation for acting as a practical nurse for Julia Thomas, the wife of decedent who died January 9, 1951, and for serving as a practical nurse for decedent.

Mrs. Elisabeth Harper, a highly credible witness, testified that the services of a practical nurse of the

type of service performed by Mrs. Dockery was worth $15 per day. This witness was cross-examined by the Deputy Attorney General. The effect of the cross-examination was to show the qualifications of the witness for the purpose offered.

The effect of the entire testimony was to show that the claim of Mrs. Ida W. Dockery for her services in tending Julia Thomas as a practical nurse at the rate of $5 per day for the period of 223 days from May 1, 1950, to January 9, 1951, was reasonable, as was the same charge for her services as a practical nurse, rendered to decedent for the period of 202 days from November 11, 1952, to May 31, 1953.

Other reputable witnesses testified and were cross-examined as to the type of services performed by claimant as well as to the number of days such services were performed. Dr. Harrison F. Crampton, who was present at the house every other day, testified as to the long hours of service and the nature of the service.

The record establishes that these services as a practical nurse for the periods of 202 days and 223 days, or a total of 425 days were worth $2,125. This amount for services as a practical nurse is in addition to the amount of $5,685 for general services due Mrs. Dockery under the written contract.

The rents to which Ida Dockery was entitled under the agreement of April 20, 1950, totaled $836.

The record is clear that Ida Dockery paid Troxell Funeral Home in the amount of $554. Checks and receipts were offered in proof of their payment.

The record is clear that Ida Dockery would be entitled to reimbursement of principal paid on the mortgage on the home of decedent. This amount totaled $1,016.90. Interest on said mortgage amounted to $275.

The record is clear as to the proof of Ida W. Dockery

in the amount of $10,491.90. This amount was established by the required standard of proof.

There were other claims made by Ida W. Dockery such as a claim for medical expenses paid by her for her mother, Julia Thomas, as well as a claim for reimbursement for 38 months of pension payments in the amount of $3,791. The allowance of these amounts raised a question of law.

It appears to be clear that when all parties signed the stipulation upon which the decree was based, they were in no way prejudicing the unknown heirs. The record is clear that the estate was insolvent if the clearly allowable claims were awarded.

In view of the fact that the whereabouts of decedent's next of kin were unknown, and the doubt as to the existence of such next of kin, the auditing judge appointed Leo J. Kelly, Jr., Esq., as trustee ad litem to represent such parties in connection with the audit of the account of the administrator, and the disposition of claims against decedent's estate. The trustee ad litem was appointed under the provisions of section 704 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.704, and he properly represented the parties whom he was appointed to represent, including those who now seek to have the former proceedings reviewed.

The record indicates that there was no fraud perpetrated upon the heirs of Rufus Thomas by any witness offered or testimony given in the proof of the claims of Ida W. Dockery.

The record fails to show that anyone received money due to any misstatement of fact nor is there any inference that the administrator performed its task other than strictly in accordance with the law.

There is no question that distribution was made by the Coraopolis Trust Company, administrator, by virtue of a decree of this court dated February 8, 1955.

A decree of distribution having been entered February 8, 1955, and complete distribution made thereunder and pursuant thereto in the same month and receipts entered in the audit docket, no review can be granted at this late date as to any property distributed by the personal representative in accordance with such decree of court and before the filing of the petition for review.

Fiduciaries Act of April 18, 1949, P. L. 512, art. VII, sec. 721, 20 PS §320.721, supra: "Provided, That this section shall not authorize review as to any property distributed by the personal representative in accordance with a decree of court before the filing of the petition."

Osterling's Estate, 337 Pa. 225, 228 (1940) : "The right to a review is further limited by the provision of the statute [which first appeared in the Act of October 13, 1840, P. L. 1 (1841), Section 1, and was carried into the Fiduciaries Act] that it 'shall not extend to any cause when the balance found due shall have been actually paid and discharged by any fiduciary'."

Straus Estate, 63 D. & C. 185, 187 (1948), O. C., Philadelphia County: ". . . It is mandatory that petitioner should aver that distribution had not been made."

The petition is defective in a number of respects. It does not state the date that the heirs discovered the death of Rufus Thomas. If the heirs knew of the death of Rufus Thomas and filed no exceptions to the decree, they would not be entitled to review. The matter was fully heard, fairly tried and a proper decree entered. It is now res judicata. The service of the petition shows that the citation was served on Ira Bradford, Esq., counsel for Alease Jones, and not on the party herself. Alease Jones has not been properly brought into these proceedings for review.

Straus Estate, supra, at 187: "The petition is faulty,

both in form and in substance; in form because counsel for the parties have been cited instead of the parties themselves. . . . It is mandatory that petitioner should aver that distribution had not been made: Thomas' Estate, 184 Pa. 640."

Furthermore, even if the claim of Alease Jones were not allowed, the amount due Mrs. Dockery would exhaust the funds for distribution and it would serve no useful purpose to open the decree of February 8, 1955.

Even if the averments of the petition were not analyzed as above, petitioner is not entitled to relief. As the Supreme Court said in Hamilton Estate, 351 Pa. 419, 423:

"The appellant's contention cannot be sustained. Publication of the required statutory notice of the filing of the account had 'the same effect as actual notice' and was equally binding upon everyone: Holben's Estate, 300 Pa. 169, 173, 150 A. 604; Lorch's Estate, 284 Pa. 500, 506, 131 A. 381. Notwithstanding the petitioner was a non resident of the state, the notice bound her no less. See Appeal of Priestly, 127 Pa. 420, 432, 17 A. 1084. It follows therefore, as a matter of law, that the averment as to notification contained in the petition for distribution was true so far as the appellant was concerned. The same would seem to be equally true with respect to the effect of the notice by publication upon the life tenant even though she was, at the time, committed as a weak-minded person. . . .

"Beyond that, even if the averment as to notification of interested beneficiaries could be thought to suggest erroneously that the petitioner and her sister had been given actual notice of the filing of the account, the answer is that the executor was under no duty to give them actual notice. No request therefor, as permitted by section 46(c) of the Fiduciaries Act (20 PS §833) had been made. *The fact that the averment was*

*part of a printed form is at least significant in. that it does not admit of a suggestion that it was deliberately inserted for ulterior use in this particular instance.* (Emphasis supplied.) In no event did the averment either hinder or prevent the petitioner from obtaining the information concerning her father's estate which she was at liberty to seek within the period allowed her by law for timely action. Consequently, even if the averment were given the petitioner's construction, it would still not constitute the fraud required to relieve against the statutory period of limitations which bars a right to review. See Thorne's Estate, supra, [344 Pa. 503], at pp. 510, 511, 512.

"*Moreover, while fraud, if alleged and proved, serves to continue the court's power to grant review of a fiduciary's accounts beyond the period of limitations prescribed by the statute, it does not so operate when the application for review is not filed until after the fiduciary has discharged his liability by payment made in accordance with a decree of distribution.* Section 48 of the Fiduciaries Act, while allowing for a review within the prescribed five-year period, expressly provides 'That this act shall not extend to any cause where the balance found due shall have been actually paid and discharged by any fiduciary'. In Estate of Edwin R. Mack, decd., 111 Pa. Superior Ct. 20, 169 A. 468, a petition for review of a fiduciary's account, although applied for within a year of the decree of confirmation, was refused. It there appeared that, in the meantime, a decree of distribution on the basis of the confirmed account had been effectuated by payment in accordance with its terms." (Italics supplied.)

The services which Ida W. Dockery furnished date back to April 20, 1950, and the services which Alease Jones rendered were prior to that. In the meantime, some of the witnesses are no longer available through death and disappearance and the minds and memories

of all of the witnesses would not be enhanced by this long lapse of time. In good conscience the court cannot order a retrial at this late date of matters that were thoroughly tried and extensively gone into so long ago.

For the reasons stated the preliminary objections filed will be sustained.

### Decree

PER CURIAM, March 25, 1959.—And now, to wit, this March 25, 1959, petition for review of a decree, dated February 8, 1955, having been filed in this court and preliminary objections having been filed by counsel for the Coraopolis Trust Company, administrator and counsel for estate of Rufus Thomas, deceased, and preliminary objections having been filed by counsel for Ida W. Dockery, claimant in the above estate, and same having come before the court en banc after consideration of the record it is ordered, adjudged and decreed that the objections be and are hereby sustained.