# Scott's Appeal.

112   427
127   432
127   434
112   427
133   532
112   427
183   138

112       427
208      ᶦ598ᶦ

112   427
f225  ³ 68

1. An account settled and confirmed in the Orphan's Court can only be reviewed, as a matter of right, for error of law apparent on the face of the record, or for new matter which has arisen since the decree.

2. As a matter of grace, a review may be granted for new proof discovered after the decree, which proof could not possibly have been used at the time when the decree was made.

3. Any laches or negligence on the part of the petitioner for a bill of review, destroys his title to relief.

4. Milligan's Appeal, 1 Norris, 389, followed.

March 24th, 1886. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Clark, JJ. Green, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of July Term, 1885, No. 143.

Appeal of Robert Scott, surviving trustee under the will of James Jackson, deceased, and James G. Woodrow; executor of John T. Weir, deceased, co-trustee of said Robert Scott, from a decree of said court granting the petition of the remainderman, Nancy Brown, for a review of the adjudication of the joint account filed by said appellants, as of the date of the death of John T. Weir, the deceased trustee, and from the decree of said court dismissing certain exceptions filed by said appellants to the readjudication of the auditing judge.

The following are the facts of the case as found by Ashman, J., in the adjudication of said joint account:—

The testator died April 27th, 1876, leaving a will dated March 25th, 1876, which was proved May 2d, 1876, and by which he gave to his mother, Sarah Jackson, $3,000 for the term of her natural life, and by which he directed that that sum should be held by his executors in trust for her, and that the income thereof should be paid to her quarterly, and the principal, at her death, to testator's sister, Nancy Jackson, now Nancy Brown.

Sarah Jackson, the tenant for life, died April 9th, 1884. Nancy Brown resides in Ireland. Full notice was given to the latter of the filing and audit of the account, and she was advised by letter that it would be advisable for her to be represented by counsel of her own selection, but she replied that she would not engage counsel.

By the adjudication, which was filed April 9th, 1877, of the account of the executors, the sum of $3,000, less the collateral inheritance tax of $150, was awarded to them as trustees un-

der testator's will for Sarah Jackson for life, with remainder to
Nancy Brown.   Accountants retained a mortgage for $3,000,
paying six per cent. interest, which had been purchased
by the testator in his lifetime, and which formed part of the
balance of his estate and had been treated as cash at the audit.
The mortgage was a second encumbrance upon the premises
situate and numbered 705 Corinthian avenue; but the prop-
erty was supposed by them to be amply sufficient to secure it.
In order further to protect the interests of the *cestui que trusts*
they took from David Jackson, a brother of the testator and a
legatee under his will for the same amount, a written guaran-
tee by which he bound himself to the payment of $3,000 to
the trustees in case of their failure to realize the full amount
of the mortgage out of the property.   He was at that time in
good circumstances, but afterwards became bankrupt.

      The accountants charged themselves with $3,000, the face
value of the mortgage, the sum of $150, collateral inheritance
tax, having been apparently paid by the general estate of the
testator.   In 1878, the mortgagor having defaulted in the pay-
ment of interest, the accountants were compelled to foreclose
and to buy in the property subject to the first mortgage of
$4,850.   In April, 1884, being unable to hold it longer, it was
sold, subject to that mortgage for $2,150, which was the high-
est attainable price.   After deducting taxes, interest, etc., the
net proceeds of the sale were $1509.42, which was a loss on
the net value of the investment of $1,340.58.   The property
realized an average rental of about $500 per annum, the rent,
with the exception of a period of about two months, having
been regularly paid; but the expenses for repairs and taxes
and the interest upon the first mortgage absorbed the entire
income after February, 1881, which was the date of the last
payment to the life tenant.   In point of fact, the trustees paid
$341.85, and a further sum of $44 remitted to the life tenant
but omitted from the credits, in all, $385.85 (including therein
their commissions) out of their own pockets, for which, how-
ever, they make no claim.

The accountants produced several witnesses, of whom at
least one was well known to the auditing judge, who proposed
to testify that when the mortgage in question was retained
by the accountants, the property upon which it was secured
was worth at least $9,000.   The auditing judge is of opin-
ion that the evidence was not needed, because no laches could
justly be imputed to the trustees.   They retained, under the
award to them, a security which had been selected by the tes-
tator himself, and which paid, perhaps, a higher rate of inter-
est than could have been realized upon what are known as
legal investments; and they took in addition a guarantee

which may, it is true, have been founded upon an insufficient consideration, but which they believed to be valid; and the taking of which showed a desire on their part, fully to protect the interest of the trust.

The account was vouched, and showed a balance remaining for distribution amounting to $1,450.92, which is awarded to Robert Scott, surviving trustee for Nancy Brown and Sarah Jackson.

The account was confirmed absolutely on June 18th, 1884.

On October 18th, Nancy Brown filed her petition for review of said account, wherein, after reciting the facts of the case, she assigned the following reasons why her petition should be granted :—

Wherefore, your petitioner, showing the above facts, does allege that there are errors and mistakes in said account appearing upon the face thereof, and error in law appearing in the record of the said adjudication, and in the body of the said decree, by which she is aggrieved, and she ought not to be bound thereby, and the same ought to be reviewed and corrected ; and your petitioner, according to the course of practice in this honorable court, and the Act of Assembly in such case made and provided, specifically sets forth the said errors as follows, namely :—

1. That the court erred in allowing the executors a credit of $3,000 in said account for the said second mortgage, of $3,000, improperly and illegally retained by them as the investment for said trust.

2. That the court erred in not surcharging the executors with the full amount of the said sum of $3,000, awarded to them in trust, and by them misapplied.

3. That the court erred in not surcharging the executors with the full amount of interest due upon said sum of $3,000 from the date of said award to them up to the time of the adjudication of said account.

4. That the court erred in allowing said executors commissions upon said sum of $3,000, and the income thereof, as to faithful executors, and in not surcharging them with all of said commissions in the account claimed.

5. That the court erred in finding that " no laches could justly be imputed to the trustees," and in relieving them by the decree from all liability to account to your petitioners for the waste, mismanagement, and loss of the said principal sum of $3,000, and the income thereof, during a period of about six years.

The matter was referred to an examiner to take evidence, and, after numerous meetings for this purpose, his report was filed February 17th, 1885.

On February 28th, 1885, the court, ASHMAN, J., after full consideration and hearing upon bill, answer and proofs, granted the petition for review, and filed the following opinion:

The petition addresses itself wholly to the equitable discretion of the court, and it is conceded that no ground has been laid for demanding relief as a matter of right. The life tenant and the legatee in remainder lived in Ireland, and the former, who was primarily concerned in the account of the respondents, died just prior to the audit. Both she and the petitioner were wholly ignorant of legal formalities, and mistook in a material point the notices which they received from time to time respecting the sale of the property and the audit of the trustees' account.

These notices were certainly explicit as to dates and figures, but they contained, in addition to those items, formal offers of a settlement by compromise, which the petitioner appears to have understood were required to be disposed of before the audit could take place.

The accountants, in advising the petitioner of the sale, fixed the net proceeds at or about the sum of $2,000. After the arrears of taxes and interest had been liquidated, the fund dwindled to $1,500, and shortly after receiving a copy of the account, which set forth the true balance for distribution, but too late for the audit, the husband of the petitioner came to this country duly empowered by his wife to protect her interest in the estate.

We cannot say that he has lost by *laches*, which was more apparent than real, the right to an investigation which would undoubtedly have been accorded if he had appeared at the hearing.

In 1877 the accountants filed their account as executors, and charged themselves with a cash balance of $13,497.55; out of which the sum of $3,000 in cash was awarded to them for the purpose of the present trust. Included in the balance, but undisclosed to the court, was a mortgage for $3,000, which was held by the testator at the time of his death.

The accountants appropriated this mortgage for the trust, and two years afterwards were compelled to foreclose it and to purchase the property on which it was secured. They sold the real estate in 1884, and realized some $1,600 less than the face value of the mortgage.

Credit was allowed them in this sum as for a loss which ordinary prudence could not have averted; and this credit, with the reasons upon which it was founded, is now sought to be set aside.

We are not sure that the formula which hedges an accountant's liability within the safeguard of what are termed ordin-

ary prudence and ordinary skill, has not come to be misunderstood. It is certainly misleading to say that a trustee is safe so long as he exercises over his trust the same care which an ordinarily prudent man of business bestows upon his own capital. The latter may with the utmost prudence engage in a multitude of enterprises which are forbidden to the former; he may loan his money on call, he may purchase stock in corporations whose future success is a problem, or he may invest in junior incumbrances. If a trustee should so use his fiduciary funds, he would, in most cases, lay himself open to the accusation of bad faith. The law has recognized the distinction which we are endeavoring to state, and has named certain classes of securities as legal receptacles for trust moneys, leaving other investments to be vindicated by the trustee who selected them. But it allows him a generous discretion, and where due regard has been had to the consideration, that while profit is the object of business, safety is that of trust, it pardons mere errors of judgment, even when they result in disaster.

The mortgage now in question was subsequent to another mortgage on the same premises for $4,850, and the two exceeded the assessed value of the property by $850, and the price at which the original mortgagor had purchased by $350.

It was found among the decedent's effects, but it was unaccompanied by a brief of title or by searches, and it provided for interest at eight per cent. per annum.

Here were two incidents calling for inquiry; the title papers which are the usual marks of a permanent investment, were wanting, and the high rate of interest denoted extraordinary risk.

A business man, accustomed even to speculate, would hesitate before exchanging cash for such a security. But the accountants admitted that they gave no scrutiny to the matter; they took out no searches, and sought no information as to the value of the property, nor as to the payment of taxes or of arrears upon the prior encumbrance.

In effect they insured the investment by withholding from the court and from their *cestuis que trusts* the fact of its existence, and by treating it as cash in their account. Having thus, by inaction and by silence, refrained from inquiry themselves and precluded inquiry by others, they must be held to have courted the largest measure of responsibility.

It is true that, as individuals, they had great faith in the solvency of the mortgagor. One of the accountants evinced his confidence by loaning his notes to the debtor in a sum exceeding $30,000. His business prudence in the transaction was shown by his admission that he kept no memorandum of

these obligations, and was astonished at their magnitude when he was finally called upon to make them good. It is true, also, that the respondents have the right to invoke the extreme leniency with which the courts have treated accountants whose mistakes have been untainted with fraud or wilful neglect.

But the case of *Jack's Appeal*, 13 Nor., 367, which carried the doctrine of indulgence as far as any that preceded it, and which STERRETT, J., who delivered the opinion, declared was " a close case, and by no means free from doubt," may be distinguished from the present. The former guardian who invested the minor's money in bonds on which judgment was entered, was discharged upon his own petition, and directed to pay over all moneys in his hands to his successor. The latter accepted these judgments and collected two of them when due, together with seven years' interest upon the third judgment, before the failure of the defendant. They came into his custody before the panic of 1873 had unsettled the values of real estate, and they bound land which was apparently amply sufficient for their payment. The accountant in that case escaped a surcharge because he did not make the investment, and because he had no reason to doubt its soundness.

Here the trustees selected the security without inquiry, and in the face of a widespread decline in the price of real estate.

Their reliance upon the mortgage as an investment made by the testator was fallacious because the debtor himself told them after his failure, as he would have told them before if interrogated, that he had of his own volition executed the instrument as collateral security for an antecedent debt.

We are of the opinion that the prayer of the petition should be granted, and so decree.

The account was readjudicated by ASHMAN, J. and readjudication filed April 17th, 1885 as follows:

Accountant is surcharged with the sum of $1,549.02; and in lieu of the award of $1,450.92 to Robert Scott, surviving trustee, there is awarded to Henry S. Cattell, Esq., attorney for Nancy Brown, $3,000, together with interest from April 9th, 1884, the date of the death of Sarah Jackson, the life tenant, amounting to $165, in all $3,165.

All the items on both sides of the account of interests on the mortgage for $3,000, and rents of premises No. 705 Corinthian Avenue, and taxes, water rents, interest on paramount mortgage, commissions, repairs, and expenses accrued on said mortgage and premises, are stricken from the account, and the accountant is surcharged with interest at six per cent. on $3,000, from April, 1876, to April 9th, 1884, the date of the

death of the life tenant, to wit, $1,440; which sum, less the amounts for which he claims credit in his account for payment to Sarah Jackson, amounting to $329.94; to wit: $1,110.06, is hereby awarded to the personal representatives of Sarah Jackson, deceased.

As instructed by the court in *banc* the auditing judge further decrees that each party pay his own costs, including the cost of taking the testimony produced by him; the question of ultimate liability for all the costs to be hereafter determined by the court.

And now, April 17th, 1885, the adjudication as amended is confirmed.

To this the accountants filed exceptions, and after hearing, the following final decree was entered:

And now, to wit, June 2d, 1885, for the reasons stated in the opinion of this court, filed May 29th, 1885, it is ordered, adjudged and decreed that the re-adjudication filed April 17th, 1885, be amended as follows: That the name of James G. Woodrow, executor of John T. Weir, the deceased trustee, therein stricken from the account as a party, be reinstated; that the account stand as originally filed and adjudicated, in the name of and as "the account of Robert Scott and John T. Weir, trustees under the will of James Jackson, deceased, for Mrs. Sarah Jackson and Mrs Nancy Brown, as stated by Robert Scott, surviving trustee, and James G. Woodrow, executor of John T. Weir, deceased, as of the date of the death of said John T. Weir, deceased;" that the said accountant, James G. Woodrow, executor of John T. Weir, deceased, be included and bound by the surcharges and decrees therein made, against the said Robert Scott only, as surviving trustee, as fully and as effectually as if the decrees and surcharges in said readjudication had been originally made against the said two accountants jointly; and that the said readjudication, as herein modified and amended, be confirmed absolutely.

Robert Scott surviving trustee under the will of James Jackson, deceased, and James G. Woodrow executor of John T. Weir, deceased, co-trustee of said Robert Scott, thereupon took this appeal, assigning for error, *inter alia*, the granting the petition of review, and dismissing the exception of the accountants, to the readjudication of their account.

*Joseph N. Dougherty* and *David A. Gourick*, for appellants.—1. The petition does not aver that the balance found due and awarded by the decree has not been paid over.

Such an averment is necessary to give the court jurisdiction, hence its omission is fatal: Russell's Appeal, 10 Casey, 258; Cramp's Appeal, 31 P. F. S., 90; Lehr's Appeal, 2 Out., 25.

2 AMERMAN—28

2. The petition does not point out any error in law appearing on the face of the decree, nor show that any new matter has arisen or even that any new proofs have come to light since the decree.

Without this, a review cannot be had as a matter of right.

"As a matter of *grace*, a review may be granted for new proof discovered after the decree, which proof could not possibly have been used at the time when the decree was made: Story's Eq., § 404; Riddle's Estate, 7 Harris, 431; Russell's Administrator's Appeal, 10 Casey, 258; Hartman's Appeal, 12 Id., 70." Per Mercur, J., in Milligan's Appeal, 1 Norris, 389.

3. The petition alleges, but does not show any errors or mistakes upon the face of the account.

"A decree settling an account, decides every item of it, and fixes the balance. The office of a bill of review in such a case is to surcharge and falsify; and in order to be entertained at all, it must specify erroneous items affecting the final result:" Yeager's Appeal, 10 Casey, 173; Russell's Appeal, Id., 258; Cramp's Appeal, 31 P. F. S., 90.

4. The errors assigned in the petition are frivolous, irrelevant and inmaterial or untrue.

An exception to the finding of the auditing judge, and comes too late after the final confirmation without even an allegation of after discovered evidence to support it: Wartman's Estate, 11 W. N. C., 403.

5. The evidence proves that the petitioners had full previous notice of the filing of the account of the audit.

In Wetherill's Estate, 8 W. N. C., 238, the court said, *inter alia*, in dismissing the petition for a bill of review: "A review, therefore, is not a matter of right, and if granted, it must be under the general powers which the court possesses, irrespective of the Act of Assembly. But in applications of this kind, whether for review strictly, after final decree, or for rehearing only, the rule is well settled that '*if there be any laches or negligence on the part of him who seeks it, it destroys the title to relief:*' Story's Eq. Pl., §§ 414, 421; Wiser *v.* Blachly, 2 Johns. Ch. R., 488; Young *v.* Keighly, 16 Vesey, 348;" Wistar's Estate, 39 Leg. Int., 265; Cremer's Estate, 7 W. N. C., 544.

*Henry S. Cattell*, for appellees.—The granting of a petition for review being a matter wholly within the discretion of the Orphans' Court, the exercise of that discretion will not be reviewed unless the record shows palpable and gross abuse: Milne's Appeal, 3 Outerbridge, 489; Young's Appeal, Id., 74;

George's Appeal, 2 Jones, 260; Neeld's Appeal, 20 P. F. S., 113; Bowers's Appeal, 3 Norris, 314.

The granting of a review is preliminary to a hearing respecting the alleged error, and no appeal lies from it: Bishop's Appeal, 2 Casey, 470; Jones's Appeal, 11 W. N. C., 554.

Judge PENROSE says "As· to any appearance of laches on the part of the *cestuis que trusts*, it is sufficient to say that it was fully accounted for by the fact of their residence in a foreign country and their natural want of familiarity with the true condition of their estate."

Judge ASHMAN finds that the life tenant and legatee in remainder lived in Ireland. Both she (the life tenant) and the petitioner were wholly ignorant of legal formalities, and mistook in a material point the notices which they received from time to time, respecting the sale of the property, and the audit of the trustees' account.

It has been decided, that "whenever the object of the review is to surcharge an accountant with money received by him, not accounted for, and therefore not included in the decree, the proviso of the Act of 1840 is not in the way:" Kinter's Appeal, 12 P. F. S., 318; Whelan's Appeal, 20 Id., 410; Jones's Appeal, 11 W. N. C., 554.

"It was not the design of the Act (1840) that where an accountant had not charged himself with money for which he was liable to account, the payment of the balance should preclude a re-examination:" Kinter's Appeal, *supra*.

"The Orphans' Court can entertain a bill of review, under the Act of 1840, after a decree of the Supreme Court has been had, confirming the original account:" Parker's Appeal, 11 P. F. S., 478; Young's Appeal, 3 Outerbridge, 74.

In the latter case Mr. Justice GREEN says: "The discretionary powers of the Orphans' Court to correct its own errors by petition of review, outside of the provisions of the Act of 1840, has been affirmed in the case of Gillen's Appeal, 8 W. N. C., 499; and Whelan's Appeal 20 P. F. S., 410; and is manifest upon plain principles applicable to the power of all courts over their own decrees."

Mr. Justice PAXSON delivered the opinion of the court, May 3d, 1886.

The first assignment alleges that the court below erred in granting the petition for a bill of review, and the second that the court erred in decreeing that the adjudication of June 13th, 1884 be opened.

It was conceded that the petition for a review laid no ground demanding relief as a matter of right. It was granted in the equitable discretion of the court. It is not denied that

the appellees had ample notice of the adjudication of June 13th, 1884, and might, had they desired, have attended in person or been represented by counsel. The excuse that they resided in Ireland and could not conveniently attend is of little weight, as it was entirely competent for them to have been represented, by an agent or attorney. There may be some reason for granting indulgence to a party living abroad and who was in point of fact ignorant of the proceedings; but there is none where the parties had notice of what was going on and were moreover urged to look after their interests either in person or by counsel. Any laches or negligence destroys the title to relief: Cremer's Estate, 7 W. N. C., 544.

It was conceded that the petitioners were not entitled to a review as a matter of right. Were they entitled to it as a matter of grace? The rule was thus stated in Milligan's Appeal, 82 Penn. St. Rep. at page 395. "It is well settled. that an account thus settled and confirmed can only be reviewed as a matter of *right* for error of law apparent on the face of the record, or for new matter which has arisen since the decree. As a matter of *grace* a review may be granted for new proof, discovered after the decree, which proof could not possibly have been used at the time when the decree was made;" citing Story's Eq. § 404: Riddle's Estate, 7 Harris, 431; Russell's Admr's Appeal, 10 Casey, 258; Hartman's Appeal, 12 Id., 70.

The petition in this case does not come within the rule thus stated. It does not point out any error of law appearing on the face of the decree, nor show that any new matter has arisen, or even that any new proofs have come to light since the decree. The principal ground of complaint is that the accountant was allowed a credit for the partial loss on a mortgage, which he had transferred from his account as executor to that of his account as a trustee. His claim for this allowance was made at the adjudication in 1883, and was then passed upon by the court. Whether the credit should have been allowed had all the facts been before the court then which were before it upon the review, we are not called upon to say. It is enough that it was passed upon then in a regular and orderly way, and the petitioners having failed to make their objections then, are precluded from doing so now. All the facts which they have since brought forward were known, or might have been known to them then. There is no allegation of after discovered evidence which they could not have produced at the original adjudication. There is only the allegation that they did not attend to their business because it was inconvenient to do so. This is not sufficient. They cannot have a solemn adjudication opened, and the public time

consumed for such a reason. Something is due to the finality of judicial proceedings.

The decree is reversed at the costs of the appellee, and it is ordered that the adjudication of June 13th, 1884, be confirmed.