# Given's Estate.

*Bill of discovery—Orphans' court—Elapsing of time—Failure to appeal—Act of June 7, 1917, P. L. 447.*

1. Where fourteen years have elapsed since a decree was entered by the orphans' court adjudicating an account of an executor and distributing an estate, the orphans' court cannot, in view of the five years limitation in the Act of June 7, 1917, P. L. 447, open the adjudication; nor can it, either under the act or in the exercise of its inherent equitable powers, grant a review where it appears that no appeal was taken from its decree, and that the money involved subsequently passed as a trust fund to the control of another court.

Argued January 30, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 44 and 45 Jan. T., 1928, by Charles E. Marshall, and Harry B. Gandolfo, executor, from decrees of O. C. Chester Co., of April 30, 1927, dismissing petition for bill of review, in estate of Mary Given, deceased. Affirmed.

Petition for bill of review. Before NILES, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Petition dismissed. Charles E. Marshall, and Harry B. Gandolfo, executor, appealed.

*Error assigned,* inter alia, in each appeal, was decree dismissing petition quoting it.

*Daniel .C. Donoghue,* with him *Harold R. McCowan,* for appellants.—A gift to a legatee "his heirs and assigns," has, under all the provisions of the will, been construed as a less estate than a fee: Geiger's App., 1 Monaghan 547; Smith v. Piper, 231 Pa. 378; Fassitt

v. Seip, 240 Pa. 406; Stanton v. Guest, 285 Pa. 460;
Conner's Est., 286 Pa. 382; Fairman's Est., 287 Pa. 334.

If John Given's interest under his mother's will was
only a life estate with power to consume the principal,
then he could not defeat the rights of the remaindermen
by the voluntary deed of trust in question: Fassitt v.
Seip, 240 Pa. 406, 1913.

The discretion possessed by the orphans' court to
review its decree is a judicial discretion, the abuse of
which is reviewable by the appellate court: George's
App., 12 Pa. 260; McNeel's Est., 68 Pa. 412; Trout-
man's Est. 270 Pa. 310.

The power which the orphans' court was asked to
exercise in this case is one which is independent of
lapse of time. The orphans' court, like any other court,
has discretionary power to correct its own records in
the interest of justice, and this power is inherent in the
court and is not dependent upon sec. 48 of the Fiduci-
aries Act of June 17, 1917, P. L. 447, which displaces
the Act of 1840: McCurdy's Est., 3 Pa. D. & C. 735;
Sloan's Est., 254 Pa. 346; Chappell's Est., 264 Pa.
486; Hartman's App., 36 Pa. 70; Scott's App., 112
Pa. 427; Johnson's App., 114 Pa. 132; Shuster's Est.,
26 Pa. Dist. R. 672; Audenried's Est., 14 Pa. Dist. R.
134; Collin's Est., 10 Pa. Dist. R. 249; Rienzi v. Good-
in, 249 Pa. 546; Ehrhart's Est., 31 Pa. Superior Ct.
120; Elliott's Est., 5 Pa. Dist. R. 349.

*J. Paul MacElree,* for appellees, cited: Windolph v.
Trust Co., 245 Pa. 349.

OPINION BY MR. JUSTICE SADLER, March 12, 1928:

Mary Given died in 1906, leaving a will, dated 1898,
which was probated, and letters testamentary granted
to Henry and Fletcher, executors named. Her son,
John, designated as beneficiary therein, executed, in
1907, a deed to these executors as trustees, conveying
and transferring all of his property in trust for his

support during life. Upon his death any balance remaining was made payable to such persons as he might designate by will, or, in case he failed to exercise this power, then to those entitled to inherit under the intestate laws. The fund derived through his mother's will was delivered to the trustees, and they, and their successors, managed the same until his death in 1926.

A second will of Mary Given, in which a different executor was named, was discovered in 1909. The probate of the first was therefore set aside, and the second testament substituted therefor. Section one of the latter directed as follows: "I give, devise and bequeath unto my beloved son, John Given, his heirs and assigns forever, all my property, and estate, real, personal and mixed of every kind and nature, and wheresoever the same shall be at the time of my decease, except as hereinafter specified," and the reason for specially favoring and giving to him practically everything of which she died possessed was explained in section four. Another son and a daughter were each bequeathed five dollars, and, by paragraph five of the second will, it was provided: "After my beloved son John's death it is my will that my beloved nephew, Charles E. Marshall, shall have all that is remaining of said property."

The executors named in the first will filed their account, when the second writing was proven. Exceptions were filed thereto by Gandolfo, the newly named executor, and by Marshall, who made affidavit that he was a legatee under the second will, and appeared and claimed as such. An auditor was appointed to distribute the balance shown on hand. He surcharged the accountants with certain sums expended for John's benefit, and awarded the balance to the new executor. Exceptions were filed to this report, and, on June 24, 1912, an opinion was filed by the orphans' court, in which it held that Marshall took nothing under the will of Mary Given, and Gandolfo had no interest, except in possible commissions. The entire balance was awarded to the

grantees under the voluntary trust deed executed by John in 1907, above referred to.

Judge BUTLER, in construing the second will, then said: "We cannot believe that it will be seriously contended that this clause [number five] gives Marshall any interest; that John Given takes anything less than an absolute estate." No exceptions to this decree were filed by either Gandolfo, the executor, or by Marshall, who then claimed as legatee, nor was any appeal taken therefrom. The balance of the estate was paid as directed to the trustees under the deed of 1907, and has now passed, by order of the court of common pleas, to substitutes. The entire sum was in the possession of the First National Bank of West Chester, last named as fiduciary, when John died on January 25, 1926, intestate. It has filed an account, which admittedly includes the sum of $10,502.95, received from Mary Given's estate.

On May 21, 1926, Gandolfo, the executor of the second will, and Marshall, claiming as a legatee thereunder, presented a petition to the orphans' court asking for a review of the decree of June 24, 1912, averring that it discloses on its face an error in law, since John acquired, under the terms of his mother's will, only a life estate with a power to consume, and not an absolute interest as decreed by the court in 1912. It is therefore insisted that Marshall is entitled to the portion of the assets derived from Mary Given's estate delivered to the trustees under the deed of 1907, and now in the hands of their successor appointed by the common pleas. The contention is that a legal mistake was committed in the distribution ordered in 1912, which should now be corrected. The excuse for failure to insist upon the supposed right at the time by appeal is based on the asserted belief that such course was not required until the son should die, when it could then be definitely determined whether the entire fund had been required for John's support, and if any portion thereof remained undisposed

of. It may be noted that when John exercised the right
to dispose of the fund in 1907, Marshall was aware of
the second will, which he believed of no value, because
of the presence of like provisions in the first, and he
was a witness to the deed of conveyance. Subsequently,
he made claim as remainderman, and contested the
question before the court in 1912, but failed to except
to the order made, and did not seek a review of the ad-
verse decree entered. The fund was then lodged in the
trustees subject to the control of the common pleas.

The court below dismissed the petition for review,
holding, as did his predecessor, that Marshall acquired
no interest in the fund created for the benefit of John,
and of which the latter took possession and disposed of
in 1907, and reaffirmed the ruling made by Judge BUT-
LER in 1912. Whatever view be taken as to the correct-
ness of the original adjudication in holding that John
took an absolute estate, the present decree must be
affirmed. It is true that a bill of review is an independ-
ent proceeding to examine adjudications made, and that
the orphans' court is, within its jurisdiction, a court of
equity (Mallory's Est., 285 Pa. 186), and has the
inherent power to correct mistakes in interpretations
of wills made by it (Troutman's Est., 270 Pa. 310), and
alter its records in the interest of justice: Bender's
Est., 278 Pa. 199; Willing's Est., 288 Pa. 337. Where
no rights of others have intervened, the power will be
liberally exercised: Chappell's Est., 264 Pa. 486.

Conceding the existence of the implied power of the
orphans' court to make changes where error appears,
and that it has had conferred upon it not only the right
but the duty to grant relief in appropriate cases when
the mistake appears on the face of the record, and may
so order in its discretion where newly discovered evi-
dence makes such course necessary (Act. Oct. 13, 1840,
P. L. 1, as substituted by Act of June 7, 1917, P. L.
447; Troutman's Est., supra), yet the legislation just
named in express terms limits the intervention to de-

mands made within five years of the time of confirma-
tion of the account and distribution complained of:
Bender's Est., supra. Though orders similar to those
contemplated by the statutes mentioned may be made
under the general equity powers, yet this power of re-
view will be exercised only in its discretion when the
fund remains within its control, and no rights of third
parties have intervened. Such a proceeding is not to
be made a substitute for an appeal. "Relief will not
be granted in equity against a judgment at law where
the party has an adequate remedy as to the matters
complained of by appeal or error, and makes no effort
to avail himself of it, or has lost such remedy by failing
to take proper steps to secure or to perfect his appeal
or writ of error": 34 C. J. 436. As was recently said
by this court, in discussing the Act of 1917 (Troutman's
Est., supra, p. 320): "Of course, if the question at
issue had been raised, contested and decided adversely,
a petition of review could not be substituted for excep-
tions and an appeal." To like effect is Bailey's Est.,
291 Pa. 421, where an effort was made to reopen
an adjudication after appeal taken and disposed of.

In the present instance, Marshall had knowledge of
the first will, probated in 1906, was a witness to the
deed in 1907, himself produced the second will in 1909,
undertook the probating of it, secured an accounting
by the executors of the first will, filed exceptions thereto,
requested a construction of the will, as now insisted on,
which resulted in an adverse decree in 1912, and failed
to appeal. The fund was awarded to trustees, who
have been succeeded in office by an appointee of the
court of common pleas, who in turn has there filed an
account which is awaiting disposition in that court.
Practically fourteen years have elapsed since the decree
complained of was entered, and the fund is no longer
in the grasp of the orphans' court. Clearly it has no
power to reopen the adjudication under the Act of
1917, more than five years having elapsed, nor should

it attempt to do so in the exercise of inherent equitable powers, where no appeal from its original decree was taken by one who was a party to that litigation, and the money involved is now under the control of another court.

We have before us two appellants. One is Marshall, who claims as legatee, and the other Gandolfo, the executor of the proven will of Mary Given. As the same question is involved in both cases, but one discussion has been deemed necessary.

The decrees are affirmed in both Nos. 44 and 45, at the costs of the respective appellants.