Downing, Executor, Appellant, *v.* Felheim et al., Executors.

Argued September 27, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Albert L. Thomas,* with him *Charles P. Hewes,* for appellant.—Under the Act of June 7, 1917, section 48, a rehearing should have been granted: Troutman's Est., 270 Pa. 310; Willing's Est., 288 Pa. 337.

The orphans' courts may correct their own records in the interest of justice, even to protect parties from the effect of their own mistakes: Sloan's Est., 254 Pa. 346; Nimick's Est., 179 Pa. 591.

The power of the orphans' court to grant a review will be liberally exercised though the error does not appear on the face of the record: Sloan's Est., 254 Pa. 346; Turnbull's Est., 88 Pa. Superior Ct. 482.

Petitioner is not precluded by the decree of distribution: Ehrhart's Est., 31 Pa. Superior Ct. 120; Thompson's Est., 19 Pa. Dist. R. 407.

Petitioner is not estopped by laches: Hill v. Epley, 31 Pa. 331; Cuttle v. Brockway, 32 Pa. 45.

*Charles H. English,* with him *Frank B. Quinn,* of *English, Quinn, Leemhuis & Tayntor,* for appellee.—The granting or refusing of a petition for review is in the discretion of the lower court and its action will not be disturbed unless there is an abuse of that discretion: Chauncey's Est., 303 Pa. 441; Braum's Est., 90 Pa. Superior Ct. 448.

The mortgagee is not entitled to have the final decree set aside when the balance due under the account has been actually paid and discharged by the fiduciaries: Lehr's App., 98 Pa. 25; Priestley's App., 127 Pa. 420; Montgomery's App., 92 Pa. 202.

The advertisement of the filing of the account had the same effect as actual notice: Lorch's Est., 284 Pa. 500; Holben's Est., 300 Pa. 169.

Appellant's laches barred his right to relief: Buck v. Buck, 195 Pa. 373; Stetler's Est., 39 Pa. Superior Ct. 91; Kachline's Est., 7 Pa. Superior Ct. 163; Wallace's Est., 299 Pa. 333.

Opinion by Mr. Justice Maxey, November 28, 1932:

Appellant filed a petition to open and review a decree adjudicating and ordering the distribution of an estate. Lyman Felheim purchased a piece of real estate about six acres in extent from appellant, the executor and trustee of the J. F. Downing estate, and gave him a bond accompanied by a mortgage on the land for $12,500. The date was October 12, 1923, and the term was ten years. Felheim died on January 21, 1926, and in his will he bequeathed $10,000 in trust to his executors for the benefit of his sister for life, the remainder to his wife, and left the entire residue of his estate to his wife and two sons. · Interest on the mortgage was semiannually paid by Felheim until his death, and after that it was paid by appellees, up to April 12, 1929, when default occurred. Due notice by publication was given of the appointment of the two sons, the appellees, as executors.

On April 1, 1927, the accountants filed their first and final account, and after due notice by publication during April and May, the account was audited on May 27, 1927. The subsequent decree of adjudication was dated June 24, 1927. The account showed total assets for distribution, including the $10,000 trust fund, of $35,000. Distribution was made. The executors were discharged on October 20, 1927. Some time in 1927, the executors requested appellant to release about one-third of the area subject to the mortgage. He agreed to this upon payment of $4,000. The release was executed October 10, 1927, before the discharge of the executors. The mortgage debt was thereby reduced to $8,500. On March 10, 1932, about four years and nine months after the executors' accounts were adjudicated, the appellant petitioned the court to open the decree of distribution and a citation was awarded.

Appellant had received no actual notice from the executors of the filing of the audit. He was not entitled to this because he gave no written notice to the executors of his claim to have the mortgage debt paid out of

the decedent's personal estate. See section 46-c of the Fiduciaries Act of June 7, 1917, P. L. 447.

In Lorch's Est., 284 Pa. 500, 506, 131 A. 381, this court held: "Where facts exist authorizing the application of the doctrine of constructive notice, the inference of notice is not rebuttable. If the proper statutory notice has been given, the creditor's want of actual notice is not material and will not affect the running of the nonclaim statute against his demand. ...... This rule has been frequently applied where the advertisement of the filing of an account is the only information putting the creditor on inquiry."

Appellant sent bills for the semiannual interest on the mortgage debt to these executors. The later payments after the auditing of the account in June, 1927, were made by the executors personally and not as executors, which tended to put the appellant upon notice that the estate had been settled. After default occurred in April, 1929, in the semiannual payment of interest, appellant waited nearly a year and a half before he sought to compel the payment of the mortgage debt out of the personal assets of the mortgagor's estate.

The averments in the pleadings make no charge of fraud against the executors. It is alleged only that the accountants represented to the court that all of the debts against the estate had been paid and the balance was ready for distribution, whereas the executors well knew that the principal of the mortgage debt had not been paid. Appellant averred that he put in no claim at the audit because he did not know that an audit was being made. The executors stated that they gave appellant no actual notice because he presented to them no written claim, because the mortgage was not yet due, and because of their belief that it was not payable out of the personal estate, and since they received no intimation to the contrary, they felt justified in assuming that appellant intended to look only to the land for the payment of his mortgage. It is probable that laymen cus-

tomarily look upon mortgaged lands not as a mere pledge but as the primary support of an obligation to pay. As President Judge WAITE of the orphans' court points out in his opinion there is statutory recognition of this view in the Wills Act of 1917, P. L. 409, the 18th section of which provides that "unless the testator shall otherwise direct by his will, the devisee of real estate which is subject to mortgage, shall take subject thereto." This statute assumes that a testator in devising lands subject to a mortgage expects the mortgagee to look primarily to the land for the payment of his debt, and the devisee takes the land with that understanding unless, of course, the testator expressly directs otherwise.

There is nothing in the record which impugns the good faith of the executors in this entire matter. It is common knowledge that in 1927, when the account was audited, real estate values were high. Undoubtedly the land under lien was at that time ample to meet the debt. That appellant so considered it is inferable from the fact that he released the mortgage lien on a third of the acreage on payment of about a third of the debt. He admitted he knew of Felheim's death and of the appointment of the appellees as executors, yet he made no effort whatever to bring his claim to their attention. They had no intimation that he intended to ask its payment out of the funds in the testator's personal estate. He made no effort to enforce his claim against the personal assets of his debtor's estate until the value of the pledge in his hands had so shrunk as to arouse him into activity. It is not disputed that the executors at the time distribution was made were mistaken in the law as to the personal assets not being primarily liable for the payment of the mortgage debt. They evidently believed the debt secured by the bond and mortgage was not a debt to be paid out of the personal estate of the decedent and that was why they represented at the audit that there were no creditors whose claims were unpaid. While this was a mistake of law which exculpates them from any

charge or suspicion of bad faith, it is not such a mistake of law in distributing an estate, arising from an erroneous construction of a will or otherwise, as would move the court to grant a petition for review under the circumstances of this case.

The court was justified in holding that "the accountants were very frank and straightforward in their testimony and, so far as appears, acted in perfect good faith." Troutman's Est., 270 Pa. 310, 113 A. 405, is cited by the appellant. That case held, in interpreting section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, 514, that "where an error appears in an adjudication, and the balance found due has not been actually paid and discharged, a rehearing is a matter of right, unless at the audit the question at issue was raised, contested, and decided adversely to the petitioner." In that case the accountant was still in possession of the balance shown by the adjudication.

In the case before us distribution had taken place when the petition for review was presented. Section 48 of the Fiduciaries Act provides that "this act shall not extend to any cause when the balance found due shall have been actually paid and discharged by any fiduciary." Testator's sister died in April, 1928. The $10,000 trust fund bequeathed to her for life had been turned over to Mrs. Laura L. Felheim, the testator's widow. The latter had also received her one-third of the residue of the estate, and the sons had taken their own two-thirds of the residuary estate and had invested it. It was held by this court in Given's Est., 292 Pa. 483, 488, 141 A. 296: "This power of review will be exercised only in its [the court's] discretion when the fund remains within its control, and no rights of third parties have intervened."

Appellant contends that the proviso quoted from section 48 of the Fiduciaries Act does not apply here because the executors merely turned two-thirds of the residue of the property over to themselves as individuals and

presumably still have it in their possession. See Montgomery's App., 92 Pa. 202, and Ferguson v. Yard, 164 Pa. 586, 30 A. 517. In Montgomery's App., supra, this court said: "It would be a great hardship upon distributees, to whom an administrator has voluntarily made payments on account of their shares, if they may be called upon for repayment after the lapse of years. They may have spent it, or increased their style of living in entire good faith, and in ignorance of any over-payment." This reasoning applies with only slightly less cogency to the executors in the present case. The two were legatees. As executors they gave statutory notice to all creditors of the estate. They had good reason to believe that appellant at that time had ample security in the land subject to the mortgage for payment of his debt, and would look only to that land for such payment. The mortgagee did nothing to make them think otherwise. They then went ahead with the distribution and obtained their discharge in good faith. They paid their share of the estate to themselves in their personal capacity, and presumably the actual cash paid them passed out of their hands, either as investments or otherwise during the five years since elapsed. Appellant, in relying on the pledge of land for several years before presenting his claim against the personal estate of decedent, simply gambled with events and lost. He cannot be absolved from the charge of laches. While it is true that the five-year period of limitation had not elapsed before the petition was filed, yet when it would be inequitable to open a decree of distribution, a review will be denied, even though the five-year period has not completely run. "Something is due to the finality of judicial proceedings:" Scott's App., 112 Pa. 427, 5 A. 671.

"After a man has been dead for four years and more than four years after the confirmation of his account as trustee, the reasons should be weighty to induce a court to grant a review and open the account to further litigation. Especially should the delay be clearly and satis-

574

factorily accounted for. In such case there should be no laches:" Priestley's App., 127 Pa. 420, 17 A. 1084.

In Capuzzi's Est., 306 Pa. 27, 158 A. 555, this court recently reiterated the principle that granting or refusing a petition for review is a matter within the sound discretion of the court below and in the absence of evidence of abuse of discretion its action will not be disturbed. Here we find no evidence of abuse of discretion.

The decree is affirmed at appellant's cost.