## Emig Estate

*John Carl Foster, Jr.*, for accountant.

*J. Richard Budding, George Atkins* and *Harry L. McNeal, Jr.*, for exceptants.

GROSS, P. J., February 16, 1957.—Two petitions were filed, asking the court to open its adjudication and report of audit of the first and final account of the executor of the estate of Carrie D. Emig, deceased, for the purpose of hearing proofs of petitioners' claims, which had not been presented at the time of the audit of the executor's account.

Decedent died October 18, 1954, testate and unmarried. Letters testamentary were duly granted on her estate to The York County National Bank, the executor named in her will. The executor filed its first and final account of its administration of the estate of said decedent on December 21, 1955, which came up regularly for confirmation and audit on February 8, 1956, and was continued for further hearing to February 28, 1956, when the audit was closed.

We filed our adjudication and report of audit on March 2, 1956, and no exceptions having been filed thereto, the same was confirmed absolutely 10 days thereafter. In our report, we awarded to The York County National Bank, as testamentary trustee of the residuary estate of said decedent, under item 7 of her will, the sum of $28,685.58 as the corpus of the trust, for the use and benefit of Jennie S. Harner during her lifetime.

In the fifth item of the will, decedent bequeathed the sum of $250 to Claude Becker, if he shall be working for her at the time of her death.

At the audit, it was represented to the court by counsel for the accountant that Claude Becker was not working for decedent as the time of her death and that he was, therefore, not entitled to the legacy of $250, and no award of said legacy was made to him.

It is an admitted fact that no notice of the filing of the account nor of the audit of the same was given to the said Claude Becker and on June 23, 1956, he presented his petition to this court, setting forth that he

568

was employed by decedent at the time of her death, and that he also had a claim against her estate for services rendered to decedent, and asked this court to open the adjudication and audit for the purpose of allowing him to establish both his claim for a legacy and his claim for services rendered.

A citation was issued, directed to The York County National Bank, as executor trustee under the will of decedent, to Jennie S. Harner, the life beneficiary of the trust, and to Herbert E. Detwiler, the residuary-remainderman of said trust upon the death of the said Jennie S. Harner.

Although answers were filed by respondents named in the citations, the facts set forth in the petition were not denied, and at a hearing held on October 10, 1956, the interested parties all admitted that Claude Becker, petitioner, was working for decedent at the time of her death, and that he is entitled to his legacy of $250, and it was further agreed that he did render substantial services to decedent in her lifetime, and that he should be paid therefore the sum of $1,750. His legacy and the claim in the amount agreed upon will be allowed by the court in the manner and form hereinafter set forth.

On July 24, 1956, Jennie S. Harner, the life beneficiary of the trust, presented her petition to the court, setting forth that she had a claim against the estate of this decedent in the amount of $600 for nursing services rendered to decedent for a period of eight weeks, at $75 per week, during her last illness, and she also prayed that the adjudication and report of audit be opened in order to allow her to prove her claim.

Citations were issued the same as in the petition of Claude Becker, and answers filed by respondents.

It is admitted that on October 25, 1954, Jennie S. Harner presented her claim in writing to the executor, and that she had notice of the filing of the account, to which she filed exceptions and attended the sessions of

court, with her counsel, when the audit of the account and disposition of the exceptions was being considered by the court, but did not advise her counsel nor the court that she had any claim for services rendered to decedent. Nor was the court advised by the accountant of the existence of her claim, although the accountant had written notice of it as of October 25,.1954.

It appears that Jennie S. Harner was 78 years of age at the time of the audit and that, while attending the sessions of the court, she gave no notice of her claim to the court or counsel because she thought that it would be properly taken care of by the executor. Her counsel first learned of her claim shortly before the filing of her petition to open the adjudication.

Herbert E. Detwiler, the residuary-remainderman of the trust after the death of Jennie S. Harner, strenuously objected to the opening of the adjudication because, as is contended by his counsel, distribution had been made and there is no legal authority for opening the adjudication so far as her claim is concerned.

As before stated, the claim of Claude Becker will be allowed because the parties have all agreed to its allowance, and, as to the claim of Jennie S. Harner, we think it should also be allowed.

Here we have an old lady, 78 years of age, who admittedly has a just and righteous claim against this estate, who presented it in writing to the executor seven days after the death of decedent and relied upon the executor, as she had a right to rely upon the executor, to give her claim the proper attention and consideration. The objection to the payment, however, does not come from the executor but from the residuary-remainderman of the trust who says that she cannot be paid because she did not present her claim at the audit and that distribution has been made in accordance with the schedule submitted by the court in its decree confirming the account.

Without informing claimant that her claim would not be paid by it, the executor filed its account and did not report the claim to the court as unpaid, which it should have done in its petition for adjudication of its account so that the court would have had knowledge of the claim and certainly would have given claimant opportunity to have presented it at the audit and the right to prove it if objections had been made at that time to its payment.

The judge of the orphans' court has not only the right to rely upon, but in many instances must rely upon, the personal representative of an estate and his counsel to apprise the court at the audit of his accounts of all questions and all matters which require the court's decision. That is the dominant purpose of the petition for adjudication: Dukinas' Estate, 61 D. & C. 24. In the instant case, the petition of the executor for adjudication and audit of its account undoubtedly, through inadvertence or oversight, failed to report the existence of the claim of Jennie S. Harner and, in the opinion of the court, it would be a travesty on justice to hold that, because this old lady sat in court at the audit and either through the senility of old age or blunder or by reason of ignorance of legal practice and procedure she failed to inform her attorney and the court of the existence of her unpaid claim, she has forfeited all her right to any further consideration by the court of her claim.

At the audit, her counsel had no knowledge of her claim, because neither the executor nor she informed him about it. He represented her at the audit only with respect to the exceptions to the account filed by her. Knowledge or notice of her claim cannot be imputed to him because he was acting in one capacity only: Ross v. Mayflower Drug Stores, Inc., 338 Pa. 211; Harris Trust, 83 D. & C. 417.

We are not unmindful of or overlooking section 721 of the Fiduciaries Act of April 18, 1949, P. L. 512, as well as previous legislation and decisions of the courts thereunder limiting the right of the court to review accounts of personal representatives or the adjudication of the same to cases where distribution has not been made in accordance with a decree of court.

The decisions under section 721 of the Fiduciaries Act of 1949, as well as under previous legislation on the same subject, seem to be very strict in applying the rule, but it has also been held that, irrespective of the statute, the orphans' court possesses an inherent discretionary power to correct its own records in the interest of justice, even to protecting parties from the effect of their own mistakes and blunders. Relief will be granted where justice and equity require and where no rights have changed in consequence of the decree and no one will be injured thereby. See numerous Supreme Court decisions cited in volume 2, Hunter's, Orphans' Court Commonplace Book, p. 1154, and the recent decision of the Supreme Court, Gerlach Estate, 364 Pa. 207, at page 215, where the same doctrine is affirmed.

It is true that in the instant case distribution was made under order of court to the executor-trustee, and it has been held in Hamilton Estate, 351 Pa. 419, that distribution to an executor-trustee is in fact and law a distribution, but it does not necessarily follow that such a distribution closes the door absolutely against giving relief as equity and justice may require. It has been held that it does not: Troutman's Estate, 270 Pa. 310; Clay's Estate, 43 D. & C. 266.

It is familiar doctrine in chancery practice that the door of equity is never closed against justice and right, and, as the orphans' court is a court of equity within its jurisdiction, it is governed by principles and practice in equity: Gerlach Estate, supra.

It must be borne in mind, moreover, that the granting of a bill of review in any case is a matter within the sound discretion of the court below and in the absence of abuse of discretion, its action will not be disturbed by the Supreme Court. A bill of review involves the same principles of equity as a proceeding to open the adjudication of an account, because it calls for a dispensation of equity's grace and not for the recognition of a legal right, and, whenever good conscience and substantial justice require it, equity's grace will overrule a legal right and grant the review: Downing v. Felheim, 309 Pa. 566; Stewart Estate, 358 Pa. 434.

Because the funds from which payment of the claims of petitioners will be made are in the custody of the executor-trustee, we do not deem it necessary to open the adjudication but will direct the executor-trustee to pay the same out of the $28,685.58 awarded to it. . . .