### RUPPEL & McKINLEY *v.* PATTERSON and others.

*(Circuit Court, W. D. Pennsylvania. March 5, 1880.)*

LEASEHOLD — ASSIGNOR AND ASSIGNEE — RES ADJUDICATA.— Questions determined by a court of competent jurisdiction in a suit against tha assignor of a lease, for rent accruing subsequent to the assignment, cannot be reconsidered in a suit by the assignor against the assignee for the repayment of such rent.

SAME—STATUTE OF LIMITATIONS.—In such a case the statute of limitations begins to run in favor of the asssignee from the time the assignor paid the accrued rent, and not from the time the assignee made default in the payment of the same.

Motion for a new trial.

The plaintiffs leased a tract of coal land from one Stewart, in 1857, and assigned their leasehold to the defendants in 1858. In 1860 Stewart sold the leased land to the defendants, releasing them from the payment of certain back rent then due, but reserving the right to collect rent due on the lease previous to the date of the sale. In 1873 Stewart brought suit on the lease against the plaintiffs for rent due in 1859, and recovered the same after a protracted litigation. The plaintiffs thereupon brought this suit to recover the money paid by them to Stewart, for rent accrued subsequent to their assignment of the leasehold to the defendants.

*Kenneth McIntosh,* for plaintiffs.

*S. W. Cunningham* and *B. D. Kurtz,* for defendants.

PER CURIAM. The relation of principal and surety imports an obligation on the part of the principal to indemnify the

surety as against every liability growing out of that relation, and so to reimburse him whatever sum he may pay necessarily by reason of his vicarious engagement. Especially is this obligation imperative where payment has been made involuntarily by the surety under the coercion of a legal proceeding, which he exhaustively, though unsuccessfully, contested. It is no answer to his demand for reimbursement to say that questions which he fairly presented in the creditor's suit, and were decided against him by a court of competent jurisdiction, were decided erroneously, and ought to be reconsidered and rejudged, because the only duty which the law imposes upon him, as between him and the principal debtor, is to oppose to the creditor's action every proper defence known to him, or to cast the burden of defence entirely upon the principal by giving him notice to that effect. In either case the result is decisive as to the principal and surety alike, in a subsequent controversy between them.

This is the purport of the instruction to the jury, and we are unconvinced that there was any error in it.

As it is practically decisive of the defendants' liability it is immaterial to consider whether the alleged release by Stewart to the defendants discharged the debt claimed here, and so released the plaintiff, as surety, or was only a covenant not to sue the defendants, with a revocation of the creditor's right of action against the plaintiff. It is not an open question.

The remaining reason for a new trial is the alleged error of the court in instructing the jury that the statute of limitations began to run against the plaintiff from the time when he paid the debt for which he was liable as surety, and not from the time when the defendants made default in the payment of it to their creditor.

It is obvious that, until the plaintiff paid the debt, he had no *legal* demand against the defendants, nor could he maintain an action at law to recover it. Now the statute of limitations operates imperatively upon *legal* remedies only, precluding a resort to them after six years from the date when the right to maintain them accrued. Until the plaintiff was in a position to maintain an action against the defendants the

statute did not begin to run against him. This is too clear to need amplification.

It is argued, however, that upon the defendants' omission to pay the debt at its maturity the plaintiff might *then* have required them to exonerate him from his liability, and that hence from that time the statute of limitations began to run. *Ardesco Oil Co.* v. *North American Oil & Mining Co.* 16 P. F. Smith, 66 Pa. St. 375, is referred to to sustain this argument. It is there held to be "well settled that as soon as the surety's obligation becomes absolute he is entitled in equity to require the principal debtor to exonerate him," 381, and that this right is enforceable by an action, in which the measure of damages is the amount of the debt for which the surety is liable. It is distinctly recognized as strictly an equity, which may be thus enforced only because, under the peculiar system which exists in Pennsylvania, equity is administered through common law forms. But this exceptional mode of administration does not change the character of the right. It is still an equitable incident to the relation of principal and surety, which entitles the latter to demand protection against the former's possible default, and is, in its nature, distinct from and independent of the surety's *legal* remedy where the burden of payment has been actually cast upon him. Out of the payment of the debt the surety's right to employ such remedy springs, and hence it is clear that the statute of limitations has no relation to it until it accrues.

The motion for a new trial is, therefore, denied, and judgment is directed to be entered on the verdict.