AMERICAN BONDING & TRUST CO. OF BALTIMORE CITY v. LOGANS PORT & W. V. GAS CO.

(Circuit Court, D. Indiana. July 4, 1899.)

No. 9,665.

PRINCIPAL AND SURETY—SUIT BY SURETY TO COMPEL INDEMNITY.

A surety on an undertaking given to procure a temporary injunction cannot maintain a suit in equity against the principal in the nature of a bill quia timet, to require indemnity against the risk assumed, where he has paid nothing on account of it, and the suit in which the undertaking was given is still pending on appeal and undetermined, until which time there is no liability on the bond on the part of either principal or surety.

On Demurrer to Bill.

Ayres, Jones & Hollett, for complainant.
Ferdinand Winter, for defendant.

BAKER, District Judge. This is a bill in equity, in the nature of a bill quia timet, to procure a decree to indemnify the complainant against apprehended danger of loss by reason of an undertaking to procure a restraining order executed by the complainant as surety for the defendant, at the defendant's special instance and request. In the application executed by the defendant to the complainant in applying for security, the defendant covenanted, promised, and agreed "to indemnify and keep indemnified the said company from and against any and all loss, costs, charges, suits, damages, counsel fees, and expenses of whatever kind or nature which said company shall or may, for any

95 F.—4

cause at any time, sustain or incur, or be put to, for or by reason or in consequence of said company having entered into or executed said bond." On the faith of the foregoing covenant, the complainant executed with the defendant, as its surety, an undertaking to procure a temporary restraining order. The defendant had brought a suit in this court against the city of Peru for the purpose of obtaining a restraining order, to be immediately granted, prohibiting the city, and its officers, agents, and employés, and all other persons, from in any way enforcing, or attempting to enforce, any of the provisions of the ordinance dated October 5, 1897, until a hearing could be had of an application for a permanent injunction, and that upon such hearing a temporary injunction should be granted, continuing in force this restraining order until the final hearing of the cause, and that upon the final hearing the city, and its agents, officers, and employés, and all other persons, should be perpetually restrained and enjoined from enforcing or attempting to enforce any of the provisions of the ordinance, and praying for other and proper relief. The ordinance complained of was assailed by the gas company on the ground that it reduced the price to be charged for natural gas furnished to the city of Peru and its inhabitants to a rate so low as to constitute a taking of property without just compensation, and was a denial of the equal protection of the law secured to it by the fourteenth amendment of the constitution of the United States. To secure the granting of such temporary restraining order, the defendant as principal, and the complainant as surety, executed an undertaking as follows:

"The Logansport and Wabash Valley Gas Company, complainant in the above-entitled cause, as principal, and the American Bonding and Trust Company of Baltimore City, as surety, undertake to pay to the defendant in said cause, the city of Peru, all sums of money which said complainant may collect in excess of the rates prescribed by the ordinance adopted in the common council of the city of Peru described in the bill of complaint in said cause, after the taking effect of said ordinance, and while the restraining order granted in said cause, or any preliminary injunction granted therein, shall be in force, if it shall be adjudged that said temporary restraining order or preliminary injunction be wrongful."

A trial of said cause was had in this court, and a decree was rendered in favor of the defendant, ordering the dismissal of the bill of complaint. But it was also made a part of the final decree in this court that the operation of the decree should be suspended until a final hearing should be had in the supreme court, if an appeal should be taken to that court within 90 days after the entry of such decree. The cause has been appealed to the supreme court, and is now pending there, undecided.

The bill does not show that the complainant has paid anything on account of its having executed said undertaking as surety, nor that any liability has been finally adjudged by the supreme court of the United States against the principal in said undertaking. Whenever a surety signs an obligation with a principal, the law raises an implied agreement to indemnify the surety against all loss and damage by reason of his suretyship. The covenant relied upon in this case, which is "to indemnify and keep indemnified" the complainant "from and against any loss," etc., is no broader in its legal effect than the obliga-

tion implied by law in the absence of such special covenant. Nothing is added to the force of the covenant by the words "and keep indemnified," because one cannot be "indemnified" unless he is "kept indemnified." As soon as the contract of suretyship was entered into, it is firmly settled that the law raised an implied promise on the part of the principal to indemnify the surety against any loss to which he may be subjected by reason of the contract, and it is equally well settled that the surety cannot recover from the principal until a loss has been actually incurred by the surety. The city of Peru has no present right of action against the principal in the undertaking, and the surety has not been compelled to pay any sum, and, for aught that appears in the complaint, it may never be called upon to pay anything, or be put to any loss whatever, on account of its suretyship. The complainant has simply incurred, and is still incurring, a risk as surety which it contracted with the defendant to incur, and for which it charged and has received a premium. A bill in equity certainly cannot be maintained on the covenant set up until the city of Peru has obtained a decree by virtue of which it has a present right to recover of the principal and surety the moneys stipulated to be paid by the terms of the undertaking. When the liability of the principal to make such payment has been finally established by the judgment of the supreme court, it will be time enough to pay, or to give indemnity to pay. As was observed by Sir G. M. Giffard, V. C., in Wooldridge v. Norris, L. R. 6 Eq. 410:

"Now, as regards the right of a plaintiff to file a bill quia timet, the principle is clearly laid down by Lord Redesdale in these terms: 'A court of equity will also prevent injury in some cases by interposing before any actual injury has been suffered, by a bill which has been sometimes called a bill "quia timet," in analogy to proceedings at the common law, where in some cases a writ may be maintained before any molestation, distress, or impleading. Thus, a surety may file a bill to compel the debtor on a bond in which he has joined to pay the debt when due, whether the surety has been actually sued for it or not, and, upon a covenant to save harmless, a bill may be filed to relieve the covenantee under similar circumstances.'"

At present it is not certain whether any such liability will ever accrue, and certainly the mere apprehension on the part of the surety that it may incur such liability gives it no right to maintain a suit upon a mere covenant to indemnify against loss, either requiring the principal to place money or security in its hands, or to put up security which may never be required.

The demurrer to the bill will be sustained, with leave to the complainant to amend, if so advised, within 20 days, and, if not amended within 20 days, the bill of complaint shall stand dismissed, at the costs of the complainant.